**KERR–McGEE CHEMICAL CORPORATION,
Plaintiff-Appellee,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR, James G. Watt \*, and the State of California, Defendants-Appellants.**

Nos. 82–5160, 82–5217.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1983.

Decided June 30, 1983.

---

\* Substituted for Cecil Andrus. Rule 43(c) Fed.R. App.P.

Peter J. Nickles, Covington & Burling, Washington, D.C., for plaintiff-appellee.

Edwin J. Dubiel, Deputy Atty. Gen., Los Angeles, Cal., Dean K. Dunsmore, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before WRIGHT and SCHROEDER, Circuit Judges, and EAST,** Senior District Judge.

EUGENE A. WRIGHT, Circuit Judge:

This case presents the question whether, under section 164(d) of the Clean Air Act Amendments of 1977, a recommendation by the Department of Interior has caused injury to Kerr-McGee sufficient to give it standing and create a case ripe for decision. The district court decided that Kerr-McGee had been injured and granted its motion for summary judgment. We reverse and remand with instructions to dismiss because Kerr-McGee has not demonstrated that legally cognizable injury results from Interior's recommendation.

FACTS

Under section 164 of the Clean Air Act Amendments of 1977, the states alone have the power to change the air quality designations of federal lands within their boundaries. 42 U.S.C. § 7474(a) (Supp.1982). Certain federal lands, such as national monuments, may be redesignated only from Class II to Class I, the strictest pollution control category. *Id.*

Section 164(d) of the amendments requires the federal land manager to review specified federal lands to determine whether redesignation is appropriate. 42 U.S.C. § 7474(d). In 1980, the Department of the Interior, the land manager for Death Valley National Monument, recommended that California redesignate Death Valley from class II to class I. 45 Fed.Reg. 43,002 (1980).

Following Interior's recommendation, Kerr-McGee brought this declaratory judgment action against Interior and the State of California. It has pending a permit application to expand its chemical processing plant in California's Searles Valley, about

---

** Of the District of Oregon.

18 miles from the boundary of Death Valley. In theory, at least, the Searles facility and expansion may be subjected to increased pollution controls if California follows Interior's recommendation and redesignates Death Valley.[1]

Kerr-McGee alleged that Interior had not complied with the requirements of section 164(d) because it had considered only whether "air quality related values" were an important attribute of Death Valley. It argued that section 164(d) required Interior to assess in addition the health, environmental, economic, social, and energy effects of redesignation before making a recommendation to California.[2]

Kerr-McGee asserted that the statute precluded action by California until Interior made a "lawful" analysis. It contended also that the recommendation under section 164(d) acted as a "trigger" to state action on redesignation, setting in motion a chain of events that would affect drastically its Searles operations. These effects included delay in processing the permit application, the skewing of proceedings in favor of redesignation, and the likelihood that the plant would face stricter emission standards.

Finally, Kerr-McGee contended that Interior violated the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321–4347; §§ 4361–4370, by not preparing an Environmental Impact Statement (EIS) for the recommendation. It argued that the recommendation, which was forwarded to Congress, was a proposal for legislation that required an EIS. *See* 42 U.S.C. § 4332(C).

California and Interior moved to dismiss. Among other arguments, they contended that the claims were barred by the standing and ripeness doctrines. They argued that the federal recommendation caused Kerr-McGee no injury because section 164 allowed California to act without any recommendation, and allowed it to ignore the recommendation once made.

The court concluded that Kerr-McGee had alleged injuries sufficient to confer standing. It noted that Kerr-McGee alleged that California had delayed action on the permit application because of the federal recommendation.[3] It concluded that ripeness did not bar the suit because the federal action was "final agency action" within the meaning of the Administrative Procedure Act, and because California apparently planned to initiate redesignation proceedings.

On the merits, the court granted summary judgment to Kerr-McGee[4] and ruled that Interior had not considered the relevant factors in making its recommendation. Although it did not rule that the recommendation "triggered" action by California, it held that a lawful recommendation was a prerequisite to redesignation.

---

1. Redesignation may affect emission restrictions as far as 51 miles from the area redesignated. *See* Williams, "Technical Review of the Implications of Class I Designation on the Siting of Industrial Facilities," under Contract No. CX–0001–9–0006 between National Park Service and the John Muir Institute, Inc. (n.d.).

2. The statute requires explicitly that California assess these factors. Section 164(b)(1)(A) provides as follows:

 Prior to redesignation of any area under this part, notice shall be afforded and public hearings shall be conducted in areas proposed to be redesignated and in areas which may be affected by the proposed redesignation. Prior to any such public hearing a satisfactory description and analysis of the health, environmental, economic, social, and energy effects of the proposed redesignation shall be prepared and made available for public inspection and prior to any such redesignation, the description and analysis of such effects shall be reviewed and examined by the redesignating authorities.

 42 U.S.C. § 7474(b)(1)(A).

3. Although the court apparently accepted as true Kerr-McGee's allegation that the state had delayed acting on the permit application, California disputed this allegation. Our decision on the standing and ripeness issues makes it unnecessary to resolve this factual dispute or to determine the appropriateness of summary judgment on disputed facts.

4. The court did not make explicit its ruling on the NEPA issue. Our decision on standing and ripeness disposes of this issue as well.

As a result of the court's ruling, California has taken no action toward redesignating Death Valley. Both Interior and California appeal from the denial of their motions to dismiss and the judgment in favor of Kerr-McGee.

*Standing and Ripeness*

On appeal, California and Interior have renewed their contentions that the standing and ripeness doctrines bar Kerr-McGee's claims. Because standing and ripeness are jurisdictional issues, we must consider them first. *See Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission,* 659 F.2d 903, 910 (9th Cir.1981), *aff'd sub nom. Pacific Gas & Electric Co. v. State Energy Resources,* —— U.S. ——, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *State of Arizona v. Atchison, Topeka & Santa Fe Railroad,* 656 F.2d 398, 402 (9th Cir.1981).

■ Both standing and ripeness require some demonstration of injury. Standing requires that the plaintiff show that the challenged action has caused it threatened or actual injury. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).

■ To determine ripeness, the court assesses the appropriateness of the issue for judicial resolution and the hardship that will result from the denial of relief at this stage. *Toilet Goods Association v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 1523–24, 18 L.Ed.2d 697 (1967). Even when the agency action challenged is "final" and the issues raised are purely legal, a case is not ripe for adjudication absent the threat of significant and immediate impact on the plaintiff. *Id.* at 162–64, 87 S.Ct. at 1523–25.

In effect, the issues of standing and ripeness here merge into a determination whether the federal recommendation has injured Kerr-McGee. *See* 4 K. Davis, *Administrative Law Treatise* 350 (1983). If not, we have no jurisdiction.

A. *Source of Kerr-McGee's Injury*

Kerr-McGee has alleged no direct injury resulting from the federal recommendation. It admits that California retains ultimate control over the decision to redesignate Death Valley and that the direct source of its injury will be action or inaction by the state.

Instead, Kerr-McGee argues that the statute establishes a causal relationship between the recommendation and injurious action by California. It asserts that under section 164, the federal recommendation triggers state action on redesignation and makes redesignation's "harmful" effects inevitable.

It argues also that the recommendation is a statutory prerequisite to action by California, an interpretation accepted by the district court. If this is correct, the recommendation has harmed Kerr-McGee because it allows California to act when otherwise it could not. At oral argument, Interior conceded that if either the prerequisite or trigger interpretation of section 164(d) were correct, Kerr-McGee's injury would be sufficiently developed to warrant federal jurisdiction.

The question whether Kerr-McGee has been injured depends on the effect upon state proceedings of a federal recommendation under section 164(d). We must examine the statute and make a partial determination on the merits to decide whether we have jurisdiction. *See American Civil Liberties Union v. F.C.C.,* 523 F.2d 1344, 1348 (9th Cir.1975) (examination of merits to determine injury in fact).

B. *The Recommendation as a Prerequisite*

■ Section 164(d) provides that the "Federal Land Manager shall review all national monuments . . . and shall recommend any appropriate areas for redesignation as class I where air quality related values are important attributes of the area." 42 U.S.C. § 7474(d). Although the section requires that the land manager consult with the appropriate states before making a recommendation, its language does not suggest that the recommendation acts as a prerequisite.

Despite the absence of language stating that a federal recommendation was required prior to redesignation, the court concluded that California could not act without a valid recommendation. The court noted that the entire focus of the statute was air quality. Yet the only section authorizing specifically the consideration of "air quality related values" was section 164(d). Because this section gave the power to assess air quality related values to the federal land manager, the court reasoned that this federal assessment must take place before California could redesignate.

The court rejected suggestions that the states could analyze air quality values as part of their environmental analysis under section 164(b)(1)(A).[5] It asserted that if the states could assess air quality, the requirement of a federal analysis would be meaningless and section 164(d) would be surplusage.

Examination of the statute and its background convinces us that the district court erred in deciding that federal recommendation was a prerequisite to redesignation by California. In enacting the 1977 Clean Air Act Amendments, Congress stated specifically that it was removing the federal land manager's power to control classification of federal lands. H.R.Rep. No. 294, 95th Cong., 1st Sess. 7–8, *reprinted in* 1977 U.S. Code Cong. & Ad.News 1077, 1085.

The statutory language demonstrates that Congress achieved its goal of giving the states control over redesignation. Section 164(a) states simply that "a State *may* redesignate such areas as it deems appropriate." 42 U.S.C. § 7474(a) (emphasis added). If Congress intended to establish prerequisites to redesignation, it would not have given the states this broad discretionary power.

The remainder of the statute demonstrates that Congress intended that federal land managers play only an advisory role in redesignation. Although section 164(b)(1)(B) requires states to consult with the land manager before initiating redesig-

nation proceedings, the state need give the federal government only 60 days to respond.

The statute leaves the state free to act without a recommendation if the federal government does not respond within 60 days. Even if the land manager responds with a recommendation, the state may redesignate against the federal recommendation if it lists and explains the inconsistencies between the state and federal positions. 42 U.S.C. § 7474(b)(1)(B). Because California can act independently of and inconsistently with the recommendation, we conclude that the court erred in holding that the recommendation was a prerequisite to redesignation.

We disagree also with the conclusion that the federal recommendation is surplusage merely because the state may reject it. The structure of the statute reveals that Congress intended redesignation to be a cooperative effort between the state and the federal government, with final authority in the state.

The mandatory review of federal lands required by section 164(d) places the federal government on record regarding redesignation. When and if the state decides to redesignate, the recorded federal recommendation allows the state to fulfill quickly its duty under section 164(b)(1)(B) to consult with the federal government. The recommendation does play a role in facilitating the redesignation process without restricting state action.

### C. *The Recommendation as a Trigger*

█ We consider next Kerr-McGee's contention that the recommendation "triggers" state action on redesignation. Kerr-McGee alleges that the triggering effect injures it because California will not act on permit applications until the conclusion of redesignation proceedings.

There is no basis in the statute for a "trigger" interpretation. The statute allows states to initiate redesignation proceedings. 42 U.S.C. § 7474(a). It does not

5. *See supra* note 2.

suggest that federal land managers may initiate redesignation or that the states must act once a federal recommendation has been made.

In support of its trigger theory, Kerr-McGee relies on the statement of an Assistant Solicitor for Interior in a memorandum to the Chief of the Office of Legislation for the National Park Service. This interagency memorandum cannot nullify the plain language of the statute that gives the states discretion over redesignation.

Even if we accord the memorandum significant weight, however, it does not support Kerr-McGee's theory. It says that Interior might sue to compel a *response* to a recommendation, but it acknowledges that the states have complete freedom to *act* on redesignation: "[t]here is no time deadline for the States to act on the Secretary's recommendation. The States may act at any time on discretionary redesignations." Memorandum from David A. Watts to Chief, Office of Legislation, National Park Service (November 21, 1979).

 To demonstrate injury, Kerr-McGee must show that the recommendation has caused California to act in a way that harms Kerr-McGee. At most, the recommendation "triggers" a duty for California to acknowledge the federal position on redesignation. It creates no duty for California to delay permit applications, initiate redesignation proceedings, or commit any other injurious act that Kerr-McGee alleges.

California may or may not plan to redesignate Death Valley and "injure" Kerr-McGee in the manner alleged. The federal recommendation, however, is purely advisory and is neither a trigger nor a prerequisite to California's action. It subjects Kerr-McGee to no federal control or regulation, and has caused the company no injury. Without an injury, Kerr-McGee has no standing and its claim is not ripe for decision.

We reverse and remand to the district court with instructions to dismiss for lack of jurisdiction.