Ahmanullah ROSHAN, et al., Plaintiffs,

v.

William French SMITH, et al., Defendants.

Civ. A. No. 84–2176.

United States District Court, District of Columbia.

Aug. 6, 1985.

Rebecca L. Ross, Asst. U.S. Atty., Washington, D.C., for defendants.

John J. McAvoy, White & Case, Washington, D.C., Arthur C. Helton, Lawyers Committee for Intern. Rights, Lucas Guttentag, Harriet Robb, Robert S. Davis, Burt Newborne, American Civil Liberties Union, New York City, Wm. P. Quigley, New Orleans, La., Arthur Spitzer, Washington, D.C., for plaintiffs.

## MEMORANDUM OPINION

### THOMAS F. HOGAN, District Judge.

The named plaintiffs in this action include twenty-three individuals currently being detained at various Immigration and Naturalization Service facilities throughout the United States who are potentially excludable or deportable aliens, as well as seventeen attorneys and twelve advocacy and service organizations that represent and counsel detainees in immigration proceedings. The plaintiffs seek declaratory and injunctive relief that would prevent the completion and operation of an Alien Detention Center (ADC) presently under construction in Oakdale, Louisiana, and scheduled to open in October 1985. The Oakdale ADC is intended to be a 1,000 bed facility for housing individuals detained by the INS until their status is adjudicated—the largest such facility in the United States. The ADC is also intended to include an emergency expansion site for temporarily housing an additional 2,000 to 3,000 individuals in the event of a sudden influx of illegal aliens.

The detainee-plaintiffs have brought claims on behalf of themselves as well as other persons whom they assert may be detained as alleged excludable or deportable aliens at the Oakdale ADC.[1] The plaintiffs maintain that because of the Oakdale ADC's size and rural location detainees will be unable to obtain attorneys willing to represent them on a *pro bono* basis, thereby denying them constitutional and statutory rights to counsel and to meaningful access to the adjudicatory process. The detainee-plaintiffs also allege that the final Environmental Impact Statement (EIS) prepared for the project was deficient, in violation of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*, and that incarceration at the Oakdale ADC will subject detainees to adverse environmental impacts.

With respect to the attorney plaintiffs and organization-plaintiffs, the amended complaint alleges that the operation of the Oakdale detention center would interfere with their First Amendment rights to continue representation of present clients who may be transferred to Oakdale, as well as to solicit and advise prospective clients.

This case is presently before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment. Upon consideration of defendants' motion, the plaintiffs' opposition thereto, as well as the amended complaint, this Court concludes that all claims raised in the amended complaint must be dismissed.

### I.

The detainee-plaintiffs maintain that incarceration at the Oakdale ADC will violate the rights of detainees housed there to counsel and to meaningful access to the adjudicatory process as guaranteed under the Immigration and Nationality Act, 8 U.S.C. § 1362, the Administrative Procedure Act, 5 U.S.C. § 555(b), and the Due Process Clause of the Fifth Amendment.

---

1. Excludable aliens are "non-resident" aliens who have reached a border of the United States but who have not been admitted. *See Jean v. Nelson,* 727 F.2d 957, 961 n. 1 (11th Cir.1984).

Deportable aliens are "resident" aliens who succeeded in initially entering this country, either legally or illegally. *Id.*

The Immigration and Nationality Act provides that "in any exclusion or deportation proceeding ... the person concerned shall have the privilege of being represented (at no expense to the government) by such counsel ... as he shall choose." 8 U.S.C. § 1362.[2] The plaintiffs assert that because detained aliens are generally indigent but have no right to appointed counsel, they must almost exclusively depend on free legal services from charitable organizations or *pro bono* private counsel. The plaintiffs further maintain that even in urban areas with large concentrations of practicing lawyers, considerable effort is required to obtain legal representation for detained aliens in the area. Therefore, the detainee-plaintiffs allege, because the Oakdale ADC is under construction in a remote rural area with relatively few practicing attorneys compared to the number of aliens to be detained there, the detainees will have no realistic opportunity to exercise their statutory right to be represented by counsel.

The defendants have raised both standing and ripeness challenges to the detainee-plaintiffs' right to counsel claims. The standing doctrine considers whether the party seeking to invoke jurisdiction has alleged "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues...." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court enumerated three requirements of standing. The Court held that Article III's requirement of a "case and controversy" requires at a minimum that the plaintiff establish (1) that he "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and (2) that the injury "fairly can be traced to the challenged actions," and (3) "is likely to

be redressed by a favorable decision." *Id.* at 472, 102 S.Ct. at 758 (quoting *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979), and *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) ).

■ The ripeness doctrine considers whether the "conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945). The ripeness doctrine therefore requires the Court to "balance its interest in deciding the issue in a more concrete setting against the hardship to the parties caused by delaying review." *Webb v. Dept. of Health & Human Services,* 696 F.2d 101, 106 (D.C.Cir.1982) (discussing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ); *see also Andrade v. Lauer,* 729 F.2d 1475, 1480 (D.C.Cir.1984). In doing so, the Court must consider the reality and imminence of injury to the plaintiff and the adversariness of the parties' positions. *KVUE, Inc. v. Austin Broadcasting Corp.,* 709 F.2d 922, 927 (5th Cir.1983).

■ Therefore, as a general matter the standing and ripeness doctrines are directed to different concerns, with standing considering who may bring an action challenging alleged unlawful activity, and ripeness considering when such an action may be brought. *See* 13A C. Wright, A. Miller & A. Cooper, Federal Practice and Procedure, § 3531.12, at 50 (2d ed. 1984). However, to the extent that the justiciability challenge focuses on the sufficiency versus remoteness of the alleged injury, ripeness and standing concerns merge. *See Duke Power Co. v. Carolina Environmental Study Groups, Inc.,* 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978) (conclusion

---

**2.** Representatives need not be attorneys. Section 1362 also allows lay persons meeting the qualifications set forth in 8 C.F.R. § 292.1 to represent aliens. *See Ramirez v. INS,* 550 F.2d 560, 564 (9th Cir.1977).

through standing analysis that sufficient immediate injury alleged satisfies ripeness concerns); *Kerr-McGee Chemical Corp. v. Department of the Interior*, 709 F.2d 597, 600 (9th Cir.1983) (standing and ripeness issues merge into consideration of whether plaintiff-appellee injured by federal agency's action); *KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 927–28 (5th Cir.1983) (standing doctrine closely related to ripeness "case or controversy" requirement by necessity of personal stake in outcome of controversy); *Spencer v. Honorable Justices of the Supreme Court of Pennsylvania*, 579 F.Supp. 880, 882 & n. 1 (E.D.Pa.1984) ("ripeness" doctrine subsumed within standing's "threatened injury" requirement); *see also* C. Wright, A. Miller & E. Cooper, § 3531.12 (2d ed. 1984). Thus, in *Kerr-McGee, supra*, the court stated:

> Both standing and ripeness require some demonstration of injury. Standing requires that the plaintiff show that the challenged action has caused it threatened or actual injury. *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] ... (1979).
>
> To determine ripeness, the court assesses the appropriateness of the issue for judicial resolution and the hardship that will result from the denial of relief at this stage. *Toilet Goods Association v. Gardner*, 387 U.S. 158, 162 [87 S.Ct. 1520, 1523, 18 L.Ed.2d 697] ... (1967). Even when the ... action challenged is "final" and the issues raised are purely legal, a case is not ripe for adjudication absent the threat of significant and immediate impact on the plaintiff. *Id.* at 162–64 [87 S.Ct. at 1523–24]. ...

709 F.2d at 600.

 The named detainee-plaintiffs assert that they are sufficiently threatened with the injury of deprivation of counsel because they may be transferred to the Oakdale ADC, and separated from their current counsel. However, where a plaintiff seeks to rely on threatened as opposed to existing injury, the plaintiff must demonstrate that the injury to him would be immediate, concrete and specific, rather than merely conjectural and hypothetical. *United States v. SCRAP*, 412 U.S. 669, 688–89, 93 S.Ct. 2405, 2416–17, 37 L.Ed.2d 254 (1973); *California Bankers Association v. Shultz*, 416 U.S. 21, 69, 94 S.Ct. 1494, 1521, 39 L.Ed.2d 812 (1974). The named detainee-plaintiffs assert that because they are seeking political-asylum status, they are likely to be in long-term INS custody, and likely to remain in custody until after Oakdale begins operation. This Court need not rely on, or even consider, the affidavit filed by the government asserting that the INS anticipates filling Oakdale with new arrestees, to be detained on a short-term basis, rather than transferring long-term detainees to the facility. Even assuming that individuals will be transferred to Oakdale from other INS detention facilities and that at least some of the named detainee-plaintiffs will still be detained when Oakdale opens, the plaintiffs still leave the Court to speculate that it is likely that they will be selected for transfer. Such speculation piled atop assumptions fails to demonstrate a sufficient threat of imminent injury to the named plaintiffs to satisfy the threshold "case or controversy" requirement of federal jurisdiction.

The uncertainty concerning whether the named detainee-plaintiffs will ever be transferred to Oakdale is not overcome by the fact that the plaintiffs seek to assert these claims through a class action[3] or under principles of third-party standing on behalf of those persons, as yet unidentified, who will in fact be housed in Oakdale. In *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Supreme Court, in denying standing, noted that the

---

**3.** Plaintiffs filed their motion for class certification pursuant to Fed.R.Civ.P. 23(b) on December 10, 1984. By order dated February 8, 1985 this Court granted defendants' motion to stay consideration of the class certification issue until after ruling on defendants' dispositive motion.

plaintiffs sought to bring their claims as a class action, and clearly indicated that such an attempt did not relieve the named plaintiffs of the need to demonstrate a sufficient injury. The Court stated:

> That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

*Id.* at 41, 96 S.Ct. at 1925 (quoting *Worth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975).

Likewise, the named detainee-plaintiffs have not raised any sufficient basis under principles of third-party standing for recognizing their right to raise the claims of those who will be incarcerated at Oakdale. Putting aside all questions concerning whether those actually incarcerated at Oakdale would be able to pursue their own claims, the named detainee-plaintiffs have failed to demonstrate any special relationship, or inter-dependence of rights and interests, between themselves and those to be incarcerated at Oakdale to justify their acting as third-party representatives. *See, e.g., Craig v. Boren,* 429 U.S. 190, 193–97, 97 S.Ct. 451, 454–56, 50 L.Ed.2d 397 (1976); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). "Feelings of solidarity do not confer standing to sue." *Minority Police Officers Association v. City of South Bend,* 721 F.2d 197, 202 (7th Cir.1982).

Not only is the threat of injury too conjectural at this point in time, but the nature of injury alleged is itself too attenuated to present a justiciable question. The plaintiffs argue that because the Oakdale ADC

is being constructed in a rural area, and will house such a large number of individuals, there will not be enough lawyers willing to represent the detainees on a *pro bono* basis. These allegations require the Court to assume that not only the named detainee-plaintiffs, but virtually all persons housed at Oakdale, will in fact require *pro bono* counsel. Likewise, the Court is left to hypothesize as to what degree of distance between the location of lawyers and the ADC will serve as a prohibitive factor. A proper evaluation of claims such as those raised by these plaintiffs is more effectively undertaken on the basis of specific facts and circumstances, rather than suppositions.

Neither is this Court persuaded by the detainee-plaintiffs' argument that the balance of hardships requires consideration of these claims now. *See Andrade v. Lauer,* 729 F.2d 1475, 1483 (D.C.Cir.1984) (challenge to anticipated injury may be permitted where plaintiff can demonstrate undue hardship from delay). Plaintiffs maintain that if the challenges that they have raised to the Oakdale ADC are not considered until the facility is completed and they have actually been transferred there, the injury of which they complain—denial of counsel—will have already occurred. Plaintiffs' argument fails to recognize, however, that the injury does not occur simply upon their transfer to the facility, but rather upon the adjudication of the alien status without the assistance of counsel. Consequently, when threat of that injury is sufficiently imminent, an appropriate challenge to that adjudication process may be raised directly to that harm.[4]

## II.

■ The detainee-plaintiffs have also alleged that approval of construction of the

---

**4.** This Court need not determine whether a challenge to the actual adjudication of alien status on deprivation of counsel grounds may be brought by persons detained at Oakdale, or at least designated for transfer to Oakdale, prior to the adjudicatory process as a challenge to a "pattern, program or scheme" by INS officials violating their Constitutional rights, *see Haitian*

*Refugee Center v. Smith,* 676 F.2d 1023 (5th Cir.1982), or whether such a challenge may be brought only after the adjudicatory process by appeal to the Board of Immigration Appeals or by habeas corpus proceeding in the Court of Appeals. *See* 8 U.S.C. § 1105a; *see also Louis v. Meissner,* 532 F.Supp. 881, 888–89 (S.D.Fla. 1983).

Oakdale ADC was in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.* The plaintiffs allege that the final Environmental Impact Statement prepared for the project was deficient because it failed to consider the social and health impacts of the Oakdale ADC's size and location, failed to consider potential problems presented by housing a large number of persons at the emergency contingency site, failed to consider the potential impact of expansion of the Oakdale airport to service the ADC, and failed to adequately consider alternatives to the Oakdale ADC. Again, however, because the named detainee-plaintiffs are not at this time in sufficient threat of being transferred to Oakdale, and lack authority to bring claims on behalf of those who will eventually be housed there, plaintiffs' NEPA claims must likewise be dismissed.

## III.

■ The attorney-plaintiffs' and organization-plaintiffs' claims that they will be denied their First Amendment rights to counsel and advise current clients whom they allege may be transferred to Oakdale suffer from the same standing and ripeness problems as the right to counsel claims raised by the detainee-plaintiffs. Until such time as their clients are at least designated for transfer to the Oakdale ADC, the representative plaintiffs lack a sufficiently imminent threatened injury to permit them to litigate their claims.

■ Furthermore, with respect to the attorney-plaintiffs' and organization-plaintiffs' claims generally, but especially their claims that the operation of the Oakdale ADC will violate their rights to solicit and advise potential clients, this Court finds that they have failed to state a cause of action under the First Amendment. In support of this contention the plaintiffs cite those Supreme Court cases establishing that the rights to solicit, inform, and represent clients are "modes of expression and association" protected by the First Amendment. *See NAACP v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405

(1963); *In re Primus,* 436 U.S. 412, 424, 98 S.Ct. 1893, 1900, 56 L.Ed.2d 417 (1979).

Those cases stand for the proposition, however, that advising individuals that their legal rights may have been violated and soliciting prospective litigants or referring them to attorneys, may be a protected form of expression when associated with the advancement of political beliefs and ideals, and under such circumstances may not be restricted or controlled on the basis of content. *See Button,* 371 U.S. at 428–30, 83 S.Ct. at 335–36 (state could not prohibit NAACP from soliciting prospective litigants regarding issues of race discrimination); *In re Primus,* 436 U.S. at 424–30, 98 S.Ct. at 1900–03 (ACLU efforts to solicit prospective litigants).

The fact that the government may be prohibited from restricting the defendants from soliciting prospective clients clearly does not require the government to *provide* them with clients in their locality, or otherwise make access to such clients as geographically convenient as possible. The implication of such a suggestion is clearly absurd. No allegation has been raised by the attorney-plaintiffs or organization-plaintiffs that they will be prohibited or even restricted in their access to present or prospective clients at Oakdale as a matter of fact. *Compare Jean v. Nelson,* 727 F.2d 957, 983 (11th Cir.1984) (attorneys' allegations that extensive restrictions were placed on contacts between themselves and alien detainees held at Haitian Refugee Center stated claim under First Amendment). The plaintiffs' allegations of inconvenience arising from the mere distance between themselves and clients they represent or claim they wish to represent, with the complete absence of any claim of affirmative interference with their ability to do so, fails to state a claim cognizable under the First Amendment.

Therefore, for the reasons set forth above, the claims of the detainee-plaintiffs as well as the attorney-plaintiffs and organizational plaintiffs must be dismissed. An order consistent with the ruling herein accompanies this opinion.