**NATIONAL TREASURY EMPLOYEES UNION, et al.**

v.

**Ronald REAGAN, President of the United States, et al.**

**Civ. A. No. 86–4058.**

United States District Court, E.D. Louisiana.

April 29, 1988.

As Amended May 9, 1988.

---

Lois G. Williams, Director of Litigation, Elaine Kaplan, Asst. Director of Litigation, National Treasury Employees Union, Washington, D.C., Fine, Fine & RePass, Sewall S. Fine, Frank M. RePass, III, New Orleans, for National Treasury Employees Union.

H. Stephan Gordon, Gen. Counsel, Bruce Hepper, Deputy Gen. Counsel, National Federation of Federal Employees, Mark D. Roth, Gen. Counsel, Joe Goldberg, Staff Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., for additional plaintiffs.

Joyce F. Glucksman, P.C., Atlanta, Ga., for amicus curiae.

Richard K. Willard, Asst. Atty. Gen., John Voltz, U.S. Atty., Roberty J. Cynkar, Deputy Asst. Atty. Gen., Richard E. Greenberg, Shalom Brilliant, Richard G. Lepley, Robert C. Chestnut, Attys., Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT F. COLLINS, District Judge.

### Introduction

This case comes before this Court on the request for declaratory relief filed by three federal sector labor unions and several individual government employees as a result of the President's Executive Order 12564. That Order, which is captioned "Drug–Free Federal Workplace," requires agencies to establish drug testing programs to test their employees for illegal drug use. The plaintiffs have attacked the facial validity

of the Executive Order, requesting this Court to declare the Order unconstitutional, in violation of plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures. Plaintiffs also claim that the Executive Order and Federal Personnel Manual (FPM) Letter 792–16, issued by the Office of Personnel Management (OPM) and directing agencies on the implementation of the Executive Order, are inconsistent with the Civil Service Reform Act (CSRA) and the Rehabilitation Act of 1973. Finally, plaintiffs contend that the FPM Letter is invalid because it was not promulgated pursuant to the notice and comment procedure required by the Administrative Procedure Act (APA), 5 U.S.C. § 553.

### FINDINGS OF FACT

1. Plaintiff, National Treasury Employees Union (NTEU), is an unincorporated association that has its principal place of business at 1730 K Street, N.W., Suite 1100, Washington, D.C. 20006. NTEU is the exclusive bargaining representative of approximately 120,000 federal employees, and sues here on behalf of its members who may at some future date be affected by Executive Order 12564. Second Amended Complaint at ¶ 3. Plaintiff has not shown that any of its members are now subject to drug testing conducted pursuant to the Executive Order, nor has it shown that any of its members will be subject to such drug testing in the future.

2. Plaintiff, American Federation of Government Employees, AFL–CIO (AFGE), is a labor union representing approximately 750,000 federal employees world-wide, and it sues here on behalf of its members who may be affected by Executive Order 12564. Second Amended Complaint at ¶ 4. Plaintiff has not shown that any of its members are now subject to drug testing conducted pursuant to the Executive Order, except those Department of Transportation (DOT) employees subject to the drug testing plan upheld as constitutional in *American Federation of Government Employees v. Dole*, 670 F.Supp. 445 (D.D.C.1987).

3. Plaintiff, National Federation of Federal Employees (NFFE), is a labor organization that has its principal place of business at 1016 16 Street, N.W., Washington, D.C. 20036. NFFE represents approximately 150,000 employees of the federal government, and sues here on behalf of its members who may be affected by Executive Order 12564. Second Amended Complaint at ¶ 5. Plaintiff has not shown that any of its members are now subject to drug testing conducted pursuant to the Executive Order, except for those DOT employees subject to the drug testing plan upheld as constitutional in *AFGE v. Dole.*

4. Plaintiff, Maureen Shaffer, is a tax auditor with the Internal Revenue Service and is the Steward-at-Large for NTEU Chapter 6. Ms. Shaffer brings this action on behalf of herself and on behalf of members of NTEU Chapter 6 that she purports to represent. Second Amended Complaint at ¶ 6. Plaintiff has not shown that either she or the union members she represents is now subject to drug testing conducted pursuant to the Executive Order, nor has she shown that either she or the union members she represents will be subject to such testing in the future.

5. Plaintiff, Mariam C. Jones, is the President of NFFE Local 1904, and brings this action on behalf of herself and the members of NFFE Local 1904 that she purports to represent. Second Amended Complaint at ¶ 7. Plaintiff has not shown that either she or the union members she represents is now subject to drug testing conducted pursuant to the Executive Order, nor has she shown that either she or the union members she represents will be subject to such testing in the future.

6. Plaintiff, Charles B. Henry, is a GS–5 police officer at the Veterans Administration (VA) Medical Center in New Orleans, and he sues on his own behalf. Second Amended Complaint at ¶ 8. Plaintiff has not shown that he is now subject to drug testing conducted pursuant to the Executive Order, nor has he shown that he will be subject to such drug testing in the future.

7. Defendant, Ronald Reagan, is the President of the United States.

8. Defendant, Constance Horner, is the Director of OPM. Second Amended Complaint at ¶ 10.

*Executive Order 12564*

9. President Ronald Reagan issued Executive Order 12564 on September 15, 1986 under the authority of the Constitution and federal statutes including 5 U.S.C. §§ 3301(2), 7301 and 42 U.S.C. § 290ee–1. 51 Fed.Reg. at 32890.

10. The Executive Order sets forth a broad policy of the federal government with respect to the use of illegal drugs. It requires federal employees to refrain from the use of illegal drugs, declares that the use of illegal drugs is contrary to the efficiency of the federal service, and states that persons who use illegal drugs are not suitable for federal employment. Executive Order Sec. 1.

11. To achieve the goal of a drug-free workplace, the Executive Order sets in motion a step-by-step administrative process under which each agency of the federal government is called upon to develop a plan, tailored to the agency's individual needs, to achieve a drug-free workplace. Executive Order Sec. 2.

12. The individual agency plans must include a statement of policy regarding illegal drug use. Executive Order Sec. 2.

13. Agency plans to achieve a drug-free workplace are based on Employee Assistance Programs that emphasize education, counseling referral to rehabilitation, supervisory training to assist in identifying and addressing drug abuse, procedures for allowing individual employees to voluntarily seek counseling, and procedures for identifying illegal drug users. Executive Order Sec. 2(b).

14. The agency plans must include provisions for identifying illegal drug users, which can be made on the basis of any appropriate evidence, including direct observation, a criminal conviction, administrative inquiry or the results of an authorized drug testing program. Executive Order Secs. 2(b)(5), 5(f).

15. Employees must be given the opportunity to challenge any finding that they have used illegal drugs, including a positive drug test result. Executive Order Secs. 4(c), 5(g).

16. Any disciplinary action taken as a result of the drug plans must comply with existing procedural protections, including the procedures established under the CSRA, 5 U.S.C. §§ 7101 *et seq.* (1982). Executive Order Sec. 5(g).

17. Under the CSRA, an employee against whom adverse action is taken may appeal to the Merit Systems Protection Board (the Board). 5 U.S.C. §§ 7513(d). The employee is entitled to a full hearing before the Board and representation by counsel. 5 U.S.C. § 7701(a). Decisions of the Board may be appealed to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703.

18. Drug testing conducted pursuant to the Executive Order may not be used to gather evidence for criminal proceedings. If such testing produces evidence of drug use, the agency involved may not report the information to the Attorney General for possible criminal prosecution. Supplemental Appropriations Act of 1987, Sec. 503(e); Executive Order Sec. 5(h).

19. The procedures for taking the specimens must provide for individual privacy, unless there is reason to believe an individual may attempt to alter or substitute the specimen provided. Executive Order Sec. 4(c).

20. As part of the effort to identify illegal drug users, the Executive Order authorizes the development of drug testing programs. Executive Order Sec. 3.

21. The Executive Order itself, however, does not mandate any particular form of drug testing. Rather, it simply authorizes the use of drug testing programs as a diagnostic tool to identify illegal drugs users in certain carefully limited circumstances. The precise contours of the testing program are left to the discretion of each individual agency head, the person who is in the best position to judge the special needs and mission of his agency. Executive Order Sec. 3.

22. The Executive Order provides agencies with a choice of methods of drug test-

ing to suit their individual needs and missions. Although it is not required, the agency is authorized to order testing of any employee (1) when there is a reasonable suspicion that the employee uses illegal drugs; (2) as part of an investigation of an accident or unsafe practice, or (3) as part of or as a follow-up to counseling or rehabilitation through an Employee Assistance Program. Executive Order Sec. 3(c).

23. The head of each agency is also authorized to include random drug testing in his agency's plans, but the Executive Order permits random testing only for employees in certain designated sensitive positions. There is no position for which random testing is required by the Executive Order. Rather, it is left to the judgment of the agency head to determine which, if any, sensitive employee positions should be subject to random testing, the frequency with which testing should be undertaken, and the percentages of employees who are to be tested. These variables are subject to change as experience reveals the level of drug use in a particular agency. The determination is to be made only after a thorough evaluation of the agency's mission and the employee's duties, as well as the potential dangers that the employee's use of illegal drugs would pose to public health and safety, law enforcement and the national security. Executive Order Sec. 3(a).

24. After the agencies develop their individual plans, implementation of most plans cannot begin until they have been reviewed by both the Department of Justice and the Department of Health and Human Services (DHHS). Supplemental Appropriations Act of 1987, § 503, Pub.L. No. 100–71, 101 Stat. 391, *printed in* 133 Cong.Rec. H5679 (July 27, 1987). Further, no funds will be available for implementation of a drug testing plan of any agency until DHHS has submitted to Congress a detailed written analysis of each agency's plan, and the Director of the Office of Management and Budget has submitted an agency-by-agency analysis of anticipated annual costs. Supplemental Appropriations Act of 1987, § 503, Pub.L. No. 100–71, 101 Stat. 391 (1987).

25. To date, only one agency, DOT, has finalized or begun the operation of a plan or program pursuant to the Executive Order. *See AFGE v. Dole*, 670 F. Supp. 445 (D.D.C.1987) (upholding constitutionality of drug testing plan promulgated pursuant to Executive Order against facial challenge).

26. No other agency has yet issued the sixty day notice required under the Executive Order, and no other agency has announced which of its sensitive employees, if any, will be subject to random testing.

27. As a result, plaintiffs do not know at the present time which of their members are "sensitive employees" under the Executive Order, nor do they know which of their members might be tested under the Executive Order, apart from those employees included in the DOT plan.

28. FPM Letter 792–16, issued November 28, 1986 by OPM, guides agencies on implementation of the Executive Order and is a binding legislative rule. Executive Order Sec. 6(a). The Federal Personnel Manual Letter was not issued in accordance with the Administrative Procedure Act and is invalid.

29. To the extent that these Findings of Fact also constitute Conclusions of Law, they are specifically adopted as both Findings of Fact and Conclusions of Law.

## CONCLUSIONS OF LAW

*Constitutionality of Executive Order 12564*

1. Although the defendant, Ronald Reagan, had originally raised the issue of ripeness in his motion to dismiss, that argument was later abandoned in connection with that motion. Defendant's motion to dismiss was denied on the grounds that "the preclusive effect of the CSRA does not deprive plaintiffs of the right to seek injunctive and declaratory relief in federal district court." Later, on oral argument and in their briefs, defendants have contended that since only one agency has developed a finalized drug testing plan (which plan was upheld as constitutional in *AFGE v. Dole*), then plaintiffs' facial challenge to the constitutionality of the Executive Order

is premature and should await the development of a concrete factual setting.

2. Because jurisdictional issues of standing and ripeness have been raised by the defendants, the Court must consider these issues first. *Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission,* 659 F.2d 903, 910 (9th Cir.1981), *aff'd sub nom., Pacific Gas & Electric Co. v. State Energy Resources,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

3. Generally, standing and ripeness are separate concerns. Standing addresses the question of *who* may bring an action challenging alleged unlawful activity, and ripeness addresses the question of *when* such an action may be brought. *Roshan v. Smith,* 615 F.Supp. 901 (D.C.D.C.1985).

4. Standing and ripeness issues may merge into a determination of whether plaintiffs have alleged a sufficiently significant and immediate injury as a result of government action. Both of these doctrines concerning justiciability require some demonstration of injury. *Kerr–McGee Chemical Corp. v. Department of the Interior,* 709 F.2d 597, 600 (9th Cir. 1983).

5. The Fifth Circuit in *National Treasury Employees Union v. William Von Raab,* 816 F.2d 170, 176–77 (5th Cir.1987), *cert. granted,* —— U.S. ——, 108 S.Ct. 1072, 99 L.Ed.2d 232 (1988), after examining in detail the factual setting of the Customs Service drug testing plan, held that urine testing of government employees is a search within the meaning of the Fourth Amendment. *Id.* at 176. The Court stated in *Von Raab* that the determination of whether the search is a forbidden one "requires consideration of the totality of circumstances in a particular case, weighing all the factors suggesting constitutional violation against all of those indicating validity." *Id.* at 177. Based on the Supreme Court case of *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Fifth Circuit in *Von Raab* pointed out that this determination "cannot be precisely made or decided by general rules susceptible of mechanical application." *Von Raab,* 816 F.2d at 176. The Court in *Von Raab*

set out a framework of analysis for evaluating the nature of federal employees' Fourth amendment rights against governmental job related inquiries. The Fifth Circuit went on to analyze the drug testing program in terms of careful, fact-specific inquiries into the particular workplace and particular employment relationship, and the scope and manner of the related search. *Id.* at 177–179. In upholding the Customs Service plan, the *Von Raab* Court examined the particulars of that plan, the structure and scope of the plan, the purpose of the testing, and the nature of the duties performed by those tested. *Id.*

6. The Fifth Circuit, in *Von Raab* had before it a concrete, finalized drug testing plan which could be analyzed in detail. Further, under the final provisions of that plan, it was clear which of the Customs Service employees would be subject to testing under the plan. In contrast, this Court has before it a claim for declaratory relief requesting the Court to strike down Executive Order 12564 which orders government agencies to develop their own drug testing plans. The difference in the posture of the two cases requires this Court to examine ripeness issues not specifically addressed in the *Von Raab* case.

7. In determining ripeness issues, the Court must inquire whether there is a "substantial controversy" between the parties, "a dispute definite and concrete, not hypothetical or abstract." *Railway Mail Association v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945). The Court must balance the hardship to the parties caused by delaying review against the Court's interest in deciding the issue in a more concrete setting. *Webb v. Dept. of Health and Human Services,* 696 F.2d 101, 106 (D.C.Cir.1982). *See also, Toilet Goods Association v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 1523, 18 L.Ed.2d 697 (1967).

8. The Executive Order is applicable to a wide variety of federal workplaces, each with its own particular set of office regulations and job descriptions. The Order does not list every position in the federal government that should be subject to

drug testing. Instead, Executive Order 12564 leaves that task to those with the expertise to make such a determination—the agency heads. The Executive Order simply sets guidelines and outer boundaries for agency heads to follow in determining which positions are so sensitive as to warrant testing, and lays out minimum procedural guidelines regarding the collection and testing of urine to ensure that all agencies will respect individual privacy, use the most accurate tests possible, and help those employees who need help. Because of the fact specific inquiry mandated by the Fifth Circuit in *Von Raab*, litigating the constitutionality of the Executive Order must be delayed until each agency finalizes the particulars of its own plan. Balancing the hardship which would result to the plaintiffs against the Court's interest in postponing judicial review, the Court finds that the determination of whether drug testing plans implemented pursuant to the Executive Order are violative of the Fourth Amendment will be clearer once the details of a finalized plan are established by each particular agency and the persons to be tested under the plan are notified that the plan is to be implemented within sixty days. *See Toilet Goods Association v. Gardner*, 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967) ("judicial appraisal ... likely to stand on much surer footing in the context of a specific application of this regulation than could be the case in the framework of [a] generalized challenge"). The only hardship to plaintiffs as a result of this delay is the *apprehension* of a *possible* violation of *some* employees' constitutional rights. Although the DOT has implemented a drug-testing plan, that is the first and only plan promulgated under Executive Order 12564 at this point. Further, in *AFGE v. Dole*, 670 F.Supp. 445 (D.D.C.1987), the District Court for the District of Columbia recently held the DOT program constitutional, rejecting the plaintiffs' facial challenge of that plan. In spite of recent final publication of DHHS guidelines pursuant to ¶ 3 or § 503 of the Supplemental Appropriations Act of 1987, this Court is of the opinion that judicial review of the Executive Order must await implementation of the finalized plan of each particular agency. 53 Fed. Reg. 11970 (April 11, 1988).

Although this recent publication brings implementation of the Executive Order one step closer, each proposed agency plan must be reviewed and analyzed further by DHHS. DHHS must certify to Congress that each agency plan meets the standards prescribed in Section 503 of Pub.L. No. 100–71, 101 Stat. 391, and the Department of the Office of Management and Budget must submit a budget for each agency plan. There will be ample opportunity for revisions of the proposed individual agency plans based on DHHS' final guidelines and the certification of all agency plans. The final version of any proposed plan may indeed pass constitutional muster once it is reviewed in a specific factual context. Accordingly, this Court concludes that the issue of the constitutionality of Executive Order 12564 is not ripe for judicial review.

Plaintiffs' claims for declaratory relief holding Executive Order 12564 unconstitutional are therefore DISMISSED without prejudice as nonjusticiable.

*Rehabilitation Act*

█ 9. Another allegation of the plaintiffs is that their rights under the Rehabilitation Act of 1973 will be violated by the provisions of the Executive Order and FPM letter. Federal law prohibits the government from "discriminat[ing] for or against any employee or applicant for employment ... on the basis of a handicapping condition, as prohibited under Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791)." 5 U.S.C. § 2302(b)(1). For purposes of Section 501, a "handicapped" individual is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(7); 29 CFR 1613.-702(a). Alcoholism or other drug abuse are considered handicapping conditions under Section 501 of the Rehabilitation Act, which governs federal employment. *Whitlock v. Donovan*, 598 F.Supp. 126 (D.D.C.1984), *aff'd*, 790 F.2d 964 (D.C.Cir.1986); *Green v. Department of the Air Force*, 31 M.S.P.R.

152 (1986); *Averill v. Department of the Navy*, 30 M.S.P.R. 327 (1986); *Kulling v. Department of Transportation*, 24 M.S.P. R. 56 (1984).

■ 10. The duty of non-discrimination against the handicapped and the duty to reasonably accommodate an employee's handicap are not unlimited. The duty not to discriminate applies as to "qualified handicapped persons," which is defined as:

"with respect to employment, a handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who ... meets the criteria experience and/or education requirements ... of the position in question."

■ 11. The Executive Order and implementing guidelines do provide for discipline up to and including removal based on positive drug testing results. Yet, plaintiffs admit that the Rehabilitation Act does not always prohibit the government from removing an employee handicapped by drug or alcohol abuse. Some employees may not be entitled to coverage because they are not considered "otherwise qualified handicapped employees." Employees are not "otherwise qualified" where an intolerable safety risk would be presented by attempts to reasonably accommodate the employee's drug abuse. *See Mantolete v. Bolger, supra,* 767 F.2d 1416. Even as to persons who are "otherwise qualified," removal may not violate the Rehabilitation Act where, for example, the employee does not follow through on an offer of assistance. *See Averill, supra.*

12. As noted previously, standing and ripeness issues both require that plaintiffs demonstrate a sufficiently significant and immediate injury as a result of government action. *Kerr–McGee Chemical Corp.,* 709 F.2d at 600.

13. Plaintiffs have alleged that their rights under the Rehabilitation Act of 1973 will be violated by the disciplinary provisions of the Executive Order and its implementing guidelines. Yet, plaintiffs have failed to establish sufficient facts showing which if any individuals or members of the labor unions would be considered "handicapped" for purposes of the Rehabilitation Act. Further, it is impossible to discern at this point whether any of the plaintiffs would fit the definition of "qualified handicapped persons" as outlined above.

■ 14. Although this determination is normally made on an individual basis, *Mantolete v. Bolger,* 767 F.2d 1416 (9th Cir. 1985), this does not mean that each plaintiff must wait until he or she is subjected to the alleged discrimination under the Executive Order. Yet, the plaintiffs must establish that the injury or threat of injury to the named individuals and union members is "real and immediate" and not "conjectural" or "hypothetical." *Golden v. Zwickler,* 394 U.S. 103, 108–110, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113 (1969). The mere existence of a statute or regulation which plaintiffs fear will be enforced against them does not create a case or controversy, absent a threat of specific future harm. *United Public Workers of America v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). *See National Conference of Catholic Bishops v. Bell,* 490 F.Supp. 734 (D.D.C.1980), and cases cited therein.

15. Here, the government takes the position that the Executive Order is not self implementing, the FPM guidelines are non-binding, and that each agency head is free to determine the precise contours of each plan. Additionally, after the agencies develop their individual plans, implementation of most plans cannot begin until they have been reviewed by the Department of Justice and DHHS. The government's position is unclear at this point as to what disciplinary measures will eventually be required under each individual agency's plan. Therefore, the possibility of injury to the plaintiffs is based on speculation and lacking in sufficient immediacy to establish a "case or controversy." *Nat'l Conference of Catholic Bishops,* 490 F.Supp. at 739.

■ 16. This Court concludes that the plaintiffs have failed to present a "case or controversy" sufficient to invoke this Court's jurisdiction. Further, even if plaintiffs had established a "case or controver-

sy," a challenge to the Executive Order, based on plaintiffs' allegations of a violation of the Rehabilitation Act of 1973, would also fail at this time for a lack of ripeness. Ripeness is a matter of judicial discretion which is utilized to prevent courts from becoming entangled in abstract disagreements over administrative policies and "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Conference of Catholic Bishops,* 490 F.Supp. at 742 (*quoting Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

17. In the present posture of this case, the individual agencies involved have not yet prepared finalized drug testing plans pursuant to the Executive Order and would not begin to initiate any disciplinary action under the Executive Order until the individual plans are implemented. Under the standards enunciated in *Nat'l Conference of Catholic Bishops,* this Court finds that plaintiffs' assertions of injury due to an alleged violation of the Rehabilitation Act of 1973 are premature, do not challenge a final agency action, and are not ripe for resolution at this time. *Nat'l Conference of Catholic Bishops,* 490 F.Supp. at 742.

18. Accordingly, plaintiffs' claims that Executive Order 12564 violates the Rehabilitation Act of 1973 are dismissed without prejudice due to the lack, under the facts presented, of a "case or controversy" as the basis for federal jurisdiction.

*Civil Service Reform Act and Notice and Comment Issues*

19. Plaintiffs also contend that the Executive Order violates the due process clause of the Fifth Amendment and the CSRA of 1978, 5 U.S.C. §§ 7101 *et seq.* (1982), by requiring agencies to take disciplinary action against employees for drug-related misconduct. The argument does not withstand a facial reading of Sec. 5(g) of the Order, which plainly states that any disciplinary action "shall be taken in compliance with otherwise applicable procedures, including the Civil Service Reform Act." Thus, any employee who believes his illegal drug use lacks sufficient nexus

to his job performance to be grounds for disciplinary action will have an ample opportunity to have his grievance reviewed by the Merit Systems Protection Board and ultimately the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7513(a).

20. The OPM is delegated by statute, the authority to "execut[e], administe[r], and enforc[e] ... the civil service rules and regulations of the President and the Office and the laws governing the civil service." 5 U.S.C. § 1103(a)(5)(A). The Office is also responsible for "aiding the President, as the President may request, in preparing such civil service rules as the President prescribes." 5 U.S.C. § 1103(a)(7).

21. The APA requires that agencies publish notice of proposed rules in the Federal Register, give interested persons an opportunity to comment, and publish a final rule no more than 30 days before it is effective. 5 U.S.C. § 553(b), (c), (d). OPM is explicitly required to follow these requirements for any rule or regulation which "does not apply solely to the Office of its employees." 5 U.S.C. § 1103(b)(1).

22. The Executive Order provides that OPM must issue "government-wide guidance" implementing the agencies' mandatory drug testing programs and other aspects of the Executive Order related to discipline and employee assistance programs. Executive Order 12564, Section 6(a). OPM followed this dictate just two months after the Order was issued and promulgated detailed requirements for all agency programs. FPM Letter 792–16 (November 28, 1986). Plaintiffs' Exhibit 2. The FPM, into which the requirements were inserted, "is the official medium of the Office of Personnel Management for issuing personnel instructions, operational guidance, policy statements, ... and advice to other agencies." FPM 171–5, 2–1.

23. OPM made no attempt to comply with notice and comment procedures in issuing the FPM Letter. This Court concludes that OPM's failure to publish the FPM Letter for notice and comment violated the APA.

**1356**

24. The APA requires agencies to comply with notice and comment requirements whenever they engage in "rulemaking." 5 U.S.C. § 553. The APA's broad definition of the term "rule" includes "virtually every statement an agency may make." *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897 (5th Cir.1983); 5 U.S.C. § 551(4). Exceptions to the notice and comment requirements are generally read narrowly. *Baylor University Medical Center v. Heckler,* 758 F.2d 1052, 1058 (5th Cir.1985). One exception is that the notice and comment requirements apply to "substantive" or "legislative" rules, but not agency statements which are merely "interpretive." 5 U.S.C. § 553(b)(3)(A). *Chrysler Corporation v. Brown,* 441 U.S. 281, 302, 99 S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979); *Avoyelles, supra* at 908; *Batterton v. Marshall,* 648 F.2d 694 (D.C.Cir. 1980).

Interpretive rules are non-binding agency statements as to what the agency believes a statute, order, or regulation means. *Avoyelles, supra,* 648 F.2d at 702; *Chamber of Commerce v. OSHA,* 636 F.2d 464 (D.C.Cir.1980). Interpretive rules "only provide a 'clarification of statutory language,'" ... "the interpreting agency only 'reminds affected parties of existing duties.'" *Chamber of Commerce, supra,* 636 F.2d at 469, *quoting Joseph v. United States Civil Service Commission,* 554 F.2d 1140, 1153 (D.C.Cir.1977) and *Citizens to Save Spencer County v. EPA,* 600 F.2d 844, 876 n. 153 (D.C.Cir.1979).

Substantive or legislative rules, on the other hand, implement a statute or rule. *Chamber of Commerce, supra,* 636 F.2d at 469. They "grant rights, impose obligations, or produce other significant effects on private interests." *Batterton v. Marshall, supra,* 648 F.2d at 702. Substantive rules may only be issued by agencies which, like defendant OPM, have legislative rule-making authority. *Ibid.*

25. Defendants contend that the FPM Letter is not binding but is merely "guidance" to agencies in how to implement the Executive Order. To the extent the Letter contains any mandatory provisions, defendants argue, those provisions merely restate the mandatory aspects of the Order itself.

Beyond this, defendants argue that FPM Letters generally do not have the force and effect of law and do not "foreclose alternative courses of action."

26. The Court concludes that the fact that defendants have characterized the OPM issuance as non-binding "guidelines" and the fact that the issuance is contained in the FPM, do not establish the FPM letter as a non-binding agency statement which is beyond the scope of the APA requirements of publication for notice and comment. Although the agency's own classification of a rule as "interpretive" or "substantive" is given some weight, the agency label is not conclusive. *Chamber of Commerce, supra,* 636 F.2d at 468. This Circuit has recognized that "the difficulty of discerning the distinction [between substantive and interpretive rules] is patent, and is exaggerated when the effect of the promulgation may be masked by the choice of words used to describe it." *American Trucking Association, Inc. v. Interstate Commerce Commission,* 659 F.2d 452 (5th Cir.1981). It is the effect of the rule that is most relevant. The Court must examine whether the rule "genuinely leaves the agency and its decision makers free to exercise discretion." *Id.* at 463. In many cases, an agency may characterize its regulations as "guidelines," nonetheless, the Court must determine whether there are "sinews of command beneath the velvet words of the subsequent sections of the guidelines." *Id.; Western Coal Traffic League v. U.S.,* 694 F.2d 378, 392 (5th Cir.1982).

27. The Court concludes that many provisions of the FPM Letter contain mandatory instructions above and beyond the mandatory instructions contained in the Order itself. This is clear from an examination of the language of the Letter, as well as its context.

For example, the FPM Letter (but not the Order) provides that "agencies *must* take disciplinary action to deal with employees who refuse to be treated," and "*must* refuse employment to applicants who refuse to be tested." FPM Letter, Section 4(d) (emphasis added). The Letter (but not the Order) states that "agencies

*shall* ensure that drug testing programs in existence as of September 15, 1986 are brought into conformance with the Order." Section 2(c) (emphasis added). The FPM Letter contains explicitly mandatory "confidentiality" provisions (Section 4(f)), and record keeping requirements (Section 6), not contained in the Order. In addition, it contains extensive instructions and a model employee assistance plan which "addresses those functions [OPM] consider[s] essential for an EAP to provide in support of the President's drug-free workforce initiative." Section 7(e).

28. In short, the FPM Letter does more than interpret the Executive Order, it *implements* the Order by directing agencies to follow specific procedures above and beyond those contained in the Order itself. OPM's "guidelines" thus mandate particular courses of action for all agencies. Although the regulations are "decorated with words that appear carefully chosen to avert classification as rules, they lead all [agencies] toward one course ..." *American Trucking, supra* at 463. Indeed, the Court notes that the "Model Plan" the White House has prepared for distribution to all agencies follows identically the "guidance" contained in OPM's directive. *See* Plaintiffs' Exhibit 35. The requirements of the Act are clear, and OPM cannot avoid its responsibility to comply with the APA's notice and comment provisions.

29. Concerning the DHHS Guidelines issued on February 13, 1987, plaintiffs concede that the Department's compliance, or lack thereof, with the applicable notice and comment requirements is not at issue in this suit. *See* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, p. 49 n. 29.

30. To the extent that these Conclusions of Law also constitute Findings of Fact, they are specifically adopted as both Findings of Fact and Conclusions of Law.

31. Accordingly, the Court hereby ORDERS that: (a) plaintiffs' claims for declaratory relief holding Executive Order 12564 unconstitutional are hereby DISMISSED WITHOUT PREJUDICE; (b) plaintiffs' claims under the Rehabilitation Act of 1973 are DISMISSED WITHOUT PREJUDICE along with plaintiffs' constitutional claims; (c) plaintiffs' claims under the Civil Service Reform Act are DISMISSED WITH PREJUDICE; (d) Federal Personnel Manual Letter 792–16, issued in violation of the Administrative Procedure Act, is hereby declared INVALID. However, this Court expresses no view on the constitutionality of such regulations if and when the Director of the Office of Personnel Management publishes the regulations as required under the notice and comment provisions of the Administrative Procedure Act.

### JUDGMENT

In accordance with this Court's Findings of Fact and Conclusions of Law, Judgment is hereby rendered partially in favor of the defendants, Ronald Reagan and Constance Horner, and against the plaintiffs, National Treasury Employees Union, American Federation of Government Employees, National Federation of Government Employees, National Federation of Federal Employees, Maureen Shaffer, Miriam L. Jones and Charles B. Henry, dismissing the following claims of plaintiffs.

(1) Plaintiffs' claims for declaratory relief holding Executive Order unconstitutional are DISMISSED without prejudice;

(2) Plaintiffs' claims under the Rehabilitation Act of 1973 are DISMISSED without prejudice; and

(3) Plaintiffs' claims under the Civil Service Reform Act are DISMISSED with prejudice.

Further, Judgment is rendered partially in favor of the plaintiffs, National Treasury Employees Union, American Federation of Government Employees, National Federation of Government Employees, National Federation of Federal Employees, Maureen Shaffer, Miriam L. Jones and Charles B. Henry, and against the defendant, Constance Horner, and Federal Personnel Manual Letter 792–16 is hereby declared INVALID. Each party to bear its own costs.