NATIONAL FEDERATION OF
FEDERAL EMPLOYEES, et
al., Plaintiffs,

v.

Richard B. CHENEY, Secretary of
Defense, et al., Defendants.

GRAPHIC COMMUNICATIONS
INTERNATIONAL UNION, et
al., Plaintiffs,    .

v.

Richard B. CHENEY, Secretary of
Defense, et al., Defendants.

Civ. A. Nos. 89–1727 (HHG),
89–1781 (HHG).

United States District Court,
District of Columbia.

Jan. 19, 1990.

See also 742 F.Supp. 4.

H. Stephan Gordon, Gen. Counsel, Alice L. Bodley, Deputy Gen. Counsel, Jeffrey Sumberg, Staff Atty., Nat. Federation of Federal Employees, Washington, D.C., for plaintiffs NFFE.

Mark D. Roth, Gen. Counsel, Joe Goldberg, Staff Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., for plaintiffs AFGE.

Martin R. Ganzglass, Anton G. Hajjar, O'Donnell, Schwartz & Anderson, Washington, D.C., for plaintiffs Graphic Communications Intern. Union, AFL–CIO, CLC, et al.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Mary E. Goetten, Shawn B. Jensen, Attys., Civ. Div. U.S. Dept. of Justice, Washington, D.C. (Gail Reinhart, Gen. Counsel's Office, Washington, D.C., of counsel), for defendants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

On April 27, 1989, the Defense Mapping Agency ("DMA" or "the Agency") adopted a Drug–Free Workforce Plan,[1] an agency-wide program of drug testing, education and counseling for employees. Plaintiffs,

---

1. The plan implements Executive Order 12564, published at 51 Fed.Reg. 32889 (Sept. 15, 1986). The Order directs the head of each Executive agency to establish drug testing programs for federal employees in "sensitive" positions and also authorizes federal agencies to test any federal employee, regardless of the nature of his or her position, upon "reasonable suspicion" that the employee had used an illegal drug either on or off duty.

the National Federation of Federal Employees ("NFFE") and the American Federation of Government Employees ("AFGE"), and individuals represented by the unions, brought this action to enjoin two aspects of the DMA's drug testing programs: (1) random testing of DMA employees with "secret" or "top secret" clearances, and (2) reasonable suspicion testing of any employee regardless of the sensitivity of his position.[2]

Nearly 8,800 DMA employees have secret or top secret clearances, including accounting clerks, custodial workers, pest controllers, boiler plant operators, air conditioning mechanics, carpenters, warehouse workers and gardeners as well as those who use classified information as part of their jobs. Under the plan, employees who hold these clearances will be selected randomly and are required to appear on short notice to produce a urine specimen. If a verified positive test results, an employee must be disciplined—and may be fired—if he is unable to show that test result is due to something other than illegal drug use.

All DMA employees regardless of whether they have access to sensitive information are subject to "reasonable suspicion" testing. Such suspicion testing may be based upon (1) observable phenomena, such as direct observation of drug use or possession or the physical symptoms of drug usage; (2) a pattern of abnormal conduct or erratic behavior; (3) arrest or conviction for a drug-related offense, or the identification of an employee as the focus of a criminal investigation into illegal drug possession, use or trafficking; (4) information provided by reliable and credible sources or independently corroborated, or (5) newly discovered evidence that the employee has tampered with a previous drug test.

■ *(a) Random Testing.* The Court of Appeals for this Circuit has recently held that the government's interest in protecting "truly sensitive information" is suffi-

cient to justify random drug testing of federal employees with access to Top Secret information. *Harmon v. Thornburgh,* 878 F.2d 484, 491–92 (D.C.Cir.1989). In that case, the court upheld random testing of Justice Department lawyers with top secret clearances regardless of whether they had regular access to top secret information. *Id.* at 492. The court declined the plaintiff's invitation to order the Department to draw lines between employees who actually handle classified documents and those who do not:

> [I]t would not be desirable to ask the Department to draw distinctions, within the class of attorneys holding top secret clearances, between attorneys who do and those who do not deal with such materials on a regular basis. The whole point of granting top secret security clearances in advance is to provide flexibility, to ensure that employees can be given access to top secret materials as soon as the need arises.

*Id.* The Court concluded that "[i]f submission to drug testing can be given access to top secret materials—and *[National Treasury Employees Union v.] Von Raab* [489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685] indicates as much—then the government may properly make testing a requirement for holding a top secret security clearance." *Id.* at 492. The Court of Appeals subsequently extended the holding in *Harmon* to cover not only employees with top secret security clearances but also those with secret security clearances. *AFGE v. Skinner,* 885 F.2d 884 (D.C.Cir.1989). On the basis of *Harmon,* defendant's motion for summary judgment must be granted with respect to the DMA plan for random drug testing of employees with valid secret and top secret security clearances.[3]

■ *(b) Reasonable Suspicion Testing.* The DMA plan provides for the testing of any employee, regardless of the sensitivity

---

**2.** Not challenged by this action are plans for applicant testing, voluntary testing, post-accident testing, and testing as a follow-up to counseling and rehabilitation.

**3.** The Court dismisses plaintiff's claim that the drug testing plan violates the Civil Service Re-

form Act, 5 U.S.C. § 2302(b)(10). *See AFGE v. Cavazos,* 721 F.Supp. 1361 (D.D.C.1989); *Nat'l Treasury Employees Union v. Reagan,* 685 F.Supp. 1346, 1355 (E.D.La.1988).

of his position, so long as there is "reasonable suspicion" that he uses drugs. It does not, however, distinguish between on-duty and off-duty drug use or impairment.

In *Bangert v. Hodel*, 705 F.Supp. 643 (D.D.C.1989) this Court held that, as a general rule, reasonable suspicion testing was constitutional as long as there was individualized suspicion of on duty drug use or drug related job impairment. *Id.* at 650. *See also, Hartness v. Bush*, 712 F.Supp. 986, 992 (D.D.C.1989) (requiring individualized suspicion of on-duty drug use or impairment); *NTEU v. Lyng*, 706 F.Supp. 934, 948–50 (D.D.C.1988) (same).

Defendant asserts that the requirement in *Bangert* of a reasonable suspicion of on-duty drug usage or impairment is untenable in light of *Jones v. Jenkins*, 878 F.2d 1476 (D.C.Cir.1989) and *NFFE v. Cheney*, 884 F.2d 603 (D.C.Cir.1989). *Jones*, however, does not address the issue, and *Cheney* stands for a somewhat different proposition.

In *Cheney*, the Court of Appeals rejected the argument that drug testing was unconstitutional because it could not distinguish between on-duty and off-duty impairment. *Id.* at 609–10 & n. 8. In other words, the Court refused to reject the only available scientific test for determining on-duty impairment because it also detected off-duty impairment.

This limited holding does not support defendant's far broader claim that it does not matter whether the impairment is on-duty or off-duty since the government has an interest in deterring both. The Court of Appeals may have implicitly rejected this type of argument in *Jones*. That decision explained that drug testing of District of Columbia school bus drivers was constitutional because it "ensure[s] that employees ... not be under the influence of drugs *while on duty*." *Jones*, 878 F.2d at 1477 (emphasis added). Were it of no consequence whether the impairment is on-duty or off-duty, as defendant claims, the last portion of the quoted sentence would be gratuitous.

The government's argument also appears to fly in the face of the Supreme Court's careful balancing of the government's safety-related concerns and employee privacy interests. At issue in *Skinner* was post-crash testing of train crews. The government had a "compelling" safety interest because "even a momentary lapse of attention can have disastrous consequences". *Skinner*, 109 S.Ct. at 1418–19. For similar reasons, the crew members had a diminished expectation of privacy. *Id.* at 1418. In *Von Raab*, the Customs agents at issue were either directly involved in interdiction of illegal drugs, carried firearms, or both. Applying the same balancing test as in *Skinner*, the Court concluded that the government had an especially strong interest in ensuring that these agents did not use drugs and that the agents, for the same reasons, had a diminished expectation of privacy.

When the Supreme Court addressed the issue of off-the-job drug usage in *Von Raab*, it was careful to emphasize the on-the-job implications of such usage and the exceptional circumstances that gave rise to the government's interest:

> Indeed, the almost unique mission of the [Customs] Service gives the Government a compelling interest in ensuring that many of these [agents involved in interdiction] do not use drugs even off-duty, for such use creates risks of bribery and blackmail against which the Government is entitled to guard.

*Von Raab*, 109 S.Ct. at 1395. No such special circumstances are present here. Nothing proffered by defendant thus far suggests that it has a "compelling interest" in preventing covered employees from off-the-job drug usage that does not affect job performance. Indeed, the defendant has not even attempted to engage in the balancing of interests that both *Skinner* and *Von Raab* require.

By its very terms, the plan applies across-the-board and without regard to the security clearance or riskiness of the position the employee holds. Every employee—no matter how mundane his duties—is subject to the plan. Defendant, thus, appears to have no greater interest in these employees' off-duty drug use, providing that it does not result in on-duty impair-

**4**

ment, than it does in illegal drug usage by any member of society.[4]

■ Accordingly, defendant's motion for summary judgment on the reasonable suspicion testing plan is denied. Plaintiff's motion for a preliminary injunction is also granted because there are "serious legal questions going to the merits." *Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C.Cir.1986).

In future briefing on the merits of the complaint,[5] there are two additional issues the Court wishes the parties to address: (1) whether the five factors listed by defendant as justifying a drug test suffice to create reasonable suspicion of on-the-job drug use or impairment, and (2) whether the factors are excessively broad or imprecise.[6]

ORDERED that the motion for a preliminary injunction be and it is hereby granted as to the "reasonable suspicion" drug testing program, and it is further

ORDERED that defendant be and he is hereby enjoined preliminarily pending a decision on the merits from performing drug tests based on a "reasonable suspicion" of drug impairment or usage, and it is further

ORDERED that defendant's motion for summary judgment be and it is hereby granted as to the random drug testing program and as to plaintiff's claims based on the Civil Service Reform Act, and it is further

ORDERED that the complaint be and it is hereby dismissed as to the random drug testing program and the claims based on the Civil Service Reform Act.

---

**4.** Defendant makes the additional argument that testing based on a suspicion of off-duty use is justified because the results of the test would give defendant a basis for deciding to ask co-workers whether they have observed drug use by the employee. The argument may be dealt with briefly. Drug tests are not, and never have been, a prerequisite to questioning employees about co-workers' on-the-job drug impairment.

**5.** The Court has, of course, made no definitive decision on the off-the-job drug use issue.

**6.** The Court, for example, is unclear as to the meaning of being the "focus of a criminal investigation". Is it the same as being a "target" or a "subject" of an investigation. If "focus" is synonomous with "subject", does that create a reasonable suspicion of on-duty drug use or impairment. The Court also is unclear as to the parameters of the terms "abnormal" or "erratic".