**ALLIED VAN LINES, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 82–2277.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1983.

Decided May 25, 1983.

---

Thomas M. Auchincloss, Jr., Rea, Cross & Auchincloss, Washington, D.C., for petitioners.

H. Glenn Scammel, I.C.C. Gen. Counsel, I.C.C., Washington, D.C., for respondents.

Before WOOD, ESCHBACH and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal raises the apparently novel question of whether an agency's statement that it lacks statutory jurisdiction to enforce one of its regulations against another agency is a legislative "rule" whose issuance may only follow the formal notice and comment procedures of 5 U.S.C. §§ 553(b) and (c). We hold that it is not. Alternatively, we are asked to decide that the specific jurisdictional interpretation rendered by the agency here was unreasonable; we decline to do so.

## I.

This case arises from the Interstate Commerce Commission's interpretation of the reach of one of its regulations concerning the motor transportation of household goods, 49 C.F.R. 1056.7(e) (1981), in light of its general statutory jurisdiction. The Commission was required to revise its regulations in this area as part of its implementation of the Household Goods Transportation Act of 1980, Pub.L. 96–454, § 6(b), 94 Stat. 2011, 2016 (hereinafter, "HGTA"). That act, *inter alia,* directed the Commission to revise its regulations such that the "Commission shall not prohibit" a carrier from basing its charges on a reweighing of a shipper's cargo. 49 U.S.C. § 11110(c). Under the pre-HGTA regulations, charges were to be based on the *lower* of the initial and subsequent weighing of a shipper's goods, 49 C.F.R. 1056.6(d) (1980). Pursuant to the new mandate of the HGTA, however, the Commission issued a regulation which provided that the charges are to be based on the *higher* of the two weights, 49 C.F.R. 1056.7(e) (1981).

The complication in this case arises from the fact that, before and after the enactment of the HGTA, other federal agencies, including the Department of Defense (DOD), have issued regulations parallel to the Commission's regulation of household goods transportation governing the provision to these agencies of the services of household goods carriers. In the case of DOD, these *regulations mandate,* in contrast to the post-HGTA Commission regulation, that charges are to be based on the *lower* of the initial and subsequent weighings of cargo. Understandably, the petitioners, who together comprise the major American private household goods movers, sought to have DOD's contracting division accept tenders of service incorporating the Commission's reweigh rule permitting a higher charge after reweighing, rather than DOD's contrary rule. DOD rejected such tenders, but the petitioners' views were bolstered somewhat by the issuance of an "informal" and non-binding opinion by the Commission's Office of Compliance to DOD indicating that the Commission's reweigh rule should apply to DOD household moving contracts. When DOD refused to abide by, or appeal, this non-binding Commission

opinion, petitioners filed a complaint in district court, not involved here, seeking an authoritative judicial construction that the Commission's post-HGTA regulation should control DOD procedures.

The Commission, on its own initiative, responded to this litigation-spawning controversy by issuing an "Interpretive Statement"[1] whose procedural pedigree and substantive validity are challenged here. That "Statement" by the Commission parted with the earlier position taken by its Office of Compliance and concluded that the HGTA did *not* provide the Commission with jurisdiction to force DOD to abide by the Commission's reweigh rule issued pursuant to the Act. The Statement consisted primarily of an assessment of the jurisdictional reach of the HGTA-authorized regulation in light of the language and legislative history of the HGTA.

The Commission began by noting that the statute by its terms provides that *"[t]he Commission* shall not prohibit [household goods] carriers ... from basing their charges on the reweigh weights...."* (emphasis added) and that the *Commission* is to "issue regulations that provide [household goods] carriers ... with the maximum possible flexibility in weighing shipment." 49 U.S.C. § 11110(c). Accordingly, the Commission concluded, "By the terms of the statute, these directions apply only to the Commission. There is no indication that Congress intended to expand our existing jurisdiction or to repeal any procurement regulations of other federal agencies that do not parallel our own." The Commission further noted that Section 6(b)(3) of the HGTA acknowledged that Commission regulations were not presumptively to be applied against other agencies in that it stated,

> To the maximum extent feasible, the provisions of this section, including the amendments made by this section, shall apply to rules and regulations pertaining to transportation of household goods for

the United States Government issued by departments, agencies, and instrumentalities of the United States (other than the Interstate Commerce Commission) ... to the same extent as such provisions apply to rules and regulations issued by the Interstate Commerce Commission. (emphasis added.)

The Commission then stated that this limited view of the reach of HTGA-authorized reweigh regulations was further confirmed by the legislative history of the Act which provided in part that any implementation of the Act's provisions by other agencies was to be accomplished only through "applicable proceedings ... to be instituted and carried out by the respective entities, such as the Department of Defense, or any other department, agency or instrumentality having regulations that pertain to the transportation of household goods for the United States Government." H.Rep. No. 96–1372, *Household Goods Transportation Act of 1980,* 96th Cong.2d Sess. 12 (Sept. 23, 1980), U.S.Code Cong. & Admin.News 1980, pp. 4271, 4282. Considering this language and legislative history, the Commission concluded that "Congress could not have intended that our revised regulations would supersede or implicitly repeal those of such other federal agencies." The Commission also noted that this interpretation was consistent with the limited nature of its jurisdiction over rates for all government traffic under 49 U.S.C. § 10721.

Petitioners now seek review of the Commission's "Interpretive Statement," arguing first that it was unlawfully issued because it was in fact a legislative "rule" whose issuance must be preceded by the general notice and comment procedures of 5 U.S.C. §§ 553(b) and (c) and not an "interpretative rule" specifically exempted from such notice and comment procedures under 5 U.S.C. § 553(b)(3)(A). Alternatively, petitioners argue that, even if this "Statement" were construed as an "interpretative rule," it must be stricken as an incorrect reading

---

1. Interstate Commerce Commission, Ex. Parte No. M.C.–19 (Sub.-No. 36), *Interpretive Statement: Applicability of Revised Operational* *Household Goods Regulations To Government Traffic (June 14, 1982).*

of the jurisdictional reach afforded to rules promulgated pursuant to the HGTA.

### II.

We confront first petitioners' argument that the Commission's Statement is in fact a legislative rule. Petitioners invoke several traditional criteria of a legislative rule: whether Congress specifically delegated to the agency authority to adopt rules on the subject matter; whether the decision is binding upon other parties; and whether the rule operates retroactively. We find the first two factors, in combination, decisive.

The principal criterion for distinguishing between legislative and interpretative rules has been stated succinctly by a leading treatise writer:

> A legislative rule is the product of an exercise of delegated legislative power to make law through rules. An interpretative rule is any rule an agency issues without exercising delegated legislative power to make law through rules. . . . [V]alid legislative rules have about the same effect as valid statutes; they are binding on courts.

K. Davis, 2 *Administrative Law Treatise,* § 7:8 at 36 (2d ed. 1979). This criterion merely restates the common understanding that legislative rules usually involve matters within agency expertise, which expertise notice and comment procedures are intended to sharpen; by contrast, public comment before the agency cannot be useful in matters outside the delegated policy expertise of the agency. While it is true that Congress, through the HGTA, delegated to the Commission the power to formulate rules permitting higher carrier rates upon reweigh, 49 U.S.C. § 11110(c), it does not follow that the Commission was also delegated the power to rule in a binding fashion on its statutory jurisdiction to apply HGTA-authorized rules. Indeed, such an analysis would be wholly circular, for where, as here, the Commission decides the issue of whether certain jurisdictional powers were in fact *delegated,* it begs the question to assert that this jurisdictional decision was rendered on the basis of a *delegated* power. Such an analysis would produce the disastrous result that an agency would always be presumed to have legally binding and essentially unreviewable power to determine its own jurisdiction.

The case law does not support such an exotic proposition. Indeed, as the D.C.Circuit noted in *Pacific Gas & Electric Co. v. Federal Power Commission,* 506 F.2d 33, 37 n. 14 (1974), "An interpretative rule expresses the agency's view of what another rule, regulation, or statute means . . . . The agency's announced interpretation is usually followed until it is overruled by a court, but the scope of judicial review is broad because the interpretation of statutory language does not involve the agency's discretion." *Accord,* K. Davis, 2 *Administrative Law Treatise,* § 7:11 at 56 (2d ed. 1979). This definition describes precisely the Commission's "Interpretive Statement" of its jurisdiction as evinced by the HGTA and its legislative history: the Statement expresses the Commission's view of what a rule (*i.e.* 49 C.F.R. 1056.7(e) (1981)) and statute mean together, and the scope of review of that Statement is necessarily broad because the question of jurisdiction is plainly not a matter within the Commission's discretion or expertise. *See Office of Consumers' Counsel v. Federal Energy Regulatory Commission,* 655 F.2d 1132, 1141 (D.C.Cir.1980). Although we are aware of no case which presented the issue of the proper classification of an agency's statement concerning its preemption of the parallel rules of other agencies, in light of the general principles discussed here, it is not surprising that the courts have repeatedly classified agency statements concerning other aspects of the reach of the agency's statutory mandate as non-binding "interpretative" rules rather than "legislative" rules triggering elaborate notice and comment requirements. *See, e.g., Energy Consumers & Producers Association, Inc. v. Department of Energy,* 632 F.2d 129, 140 (Temp.Emer.Ct.App.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 102, 66 L.Ed.2d 38 (1980) (agency determination of which oil wells are exempted from reach of relevant statute and regulations is an "in-

terpretative" rule); *Kenny v. Hampton*, 475 F.2d 1323, 1326 n. 4 (D.C.Cir.1973) (Civil Service Commission determination that Civil Service Act amendment not intended to expand coverage to certain class of retirees held to be "interpretative" rule).

Here, the Commission did no more than determine from legislative language and history that Congress did not give it the power to impose its reweigh rule on another agency with a parallel and conflicting regulation. The resulting statement was plainly interpretative, not legislative.[2]

### III.

Petitioners alternatively contend that, even assuming *arguendo* that the Commission Statement at issue here was "interpretative," the Commission erroneously interpreted the HGTA as not authorizing the Commission to impose its reweigh rule on other agencies. While the proper interpretation of the HGTA is a legal issue subject to broad review, some weight is still to be accorded the agency's interpretation depending upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

Here, the Commission based its interpretation on the language of the HGTA indicating that only the *Commission* was not to prohibit new charges on reweighing, 49 U.S.C. § 11110(c), and that its rules were to apply only "to the maximum extent feasible" to other government agencies, Section 6(b)(3). The Commission further noted legislative history directing that application of HGTA-spawned rules to other agencies was to be accomplished only through "applicable proceedings . . . to be instituted and carried out by the respective entities, such as the *Department of Defense. . . .*" (emphasis added). Commission counsel has further relied on appeal upon the explicit qualification in § 11110(c) that HGTA-created regulations were only to cover goods transported "subject to the jurisdiction of the Commission . . . ." (The Commission finally relied on its limited statutory jurisdiction in the area of rate-setting for government traffic.) In the Commission's reading, this specific cautionary language would be superfluous if Congress had intended HGTA-authorized regulations to create automatic preemptory jurisdiction over the household moving regulations of other agencies.

Petitioners do not answer these persuasive arguments directly, but instead challenge the importance of certain segments of the quoted language or cite other indications of putatively contrary intent. First, they argue, the language in Section 6(b)(3) of the HGTA which provides for extra-Commission application "[t]o the maximum extent feasible" is only "general" or "procedural" language overcome by the "specific" and "substantive" language of § 11110(c) directing that the Commission "shall not prohibit" new charges upon reweighing. However, the proffered distinctions are without merit, for, with respect to the question of the intended reach of the

---

**2.** Petitioners also argue that the Commission's denial of their Freedom of Information Act request, seeking internal Commission memoranda explaining the "Interpretive Statement," on the basis that such communications must be kept confidential in order to advance "effective agency decision-making" evinces that the Statement was in fact a "rule." However, we see no semantic or common sense reason to assume that the use of the phrase "decision-making" should be interpreted to mean legislative rule-making rather than the process of deciding to issue an interpretation of a statute.

Petitioners also argue that the Commission's assertion in its Statement that "we do not believe our regulations can or *should*" (emphasis added) apply to DOD contracting implies that the Statement rested on discretionary and fact-dependent judgments as well as statutory interpretation. This argument, however, strains too far, for the use of the word "should" follows the introductory phrase "In the light of the language of the HGTA, as well as the relevant precedent . . ." and three pages of legal analysis in which no discretionary policy considerations are discussed; more likely, the word "should" was used to communicate the prospectivity of the Statement rather than its soundness as a matter of transportation policy.

HGTA-authorized and ICC-created rule, the language contained in Section 6(b)(3) clearly establishes the threshold requirement for application of the *entire Act*. Thus, this language is not only substantive in every meaningful sense but indeed is also more specific than the general precatory command of 49 U.S.C. § 11110(c). The Commission's reading of this language is further supported by the relevant legislative history which describes the intended non-automatic process of an agency's application of HGTA rules; significantly, petitioners do not even address this highly revealing legislative prelude.

Petitioners' second challenge to the Commission's interpretation argues that since the legislative history of the HGTA noted several kinds of shippers (*e.g.* "individual shippers, commercial accounts, the United States Government, and . . . certain other businesses") and the HGTA included a provision authorizing the Commission to issue regulations specifically protecting "individual shippers," the fact that the statutory progenitor of the reweigh rule at issue here, § 11110(c), uses only the general term "shipper" indicates that Congress meant to include all government traffic. However, this broad term is contained in a paragraph which plainly limits the reach of the regulation to moving transactions which are "subject to the jurisdiction" of the Commission. To accept petitioners' construction would be to beg the prior jurisdictional question by ignoring the plain sense of the paragraph in which the term "shipper" is contained and by ignoring language of Section 6(b)(3) and the uncontroverted legislative history.

Finally, the petitioners argue that the Commission erred in relying in its jurisdictional analysis on the Commission's limited authority over *rates* in connection with the household goods traffic of other agencies, as reweigh procedures do not concern such

"rates." We need not reach this argument, however, as there is ample support for the Commission's jurisdictional conclusion in its examination of the HGTA, its legislative history, and the long-standing pattern of parallel regulation of the consequences of reweighing.[3]

Our independent assessment of the statutory materials presented convinces us that the Commission's "Interpretive Statement" was reasonable and correct.

For the foregoing reasons, the Commission's decision is affirmed.

AFFIRMED.

---

3. Petitioners also have reminded us that the Commission's Statement was at odds with an earlier letter issued by its Office of Compliance. But prior inconsistency is only one factor in the review of the correctness of an agency's interpretation. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). We note further that the earlier letter was by its very terms "informal" and non-binding, and that no clarification of it was sought. When the Commission finally, on its own initiative, formally addressed this somewhat complicated matter, it adduced extensive and persuasive statutory support for its position.