**METROPOLITAN SCHOOL DISTRICT OF WAYNE TOWNSHIP, MARION COUNTY, INDIANA, on behalf of itself and all others similarly situated, Plaintiffs,**

v.

**Robert R. DAVILA, Assistant Secretary, Office of Special Education and Rehabilitative Services, United States Department of Education, Defendant.**

No. IP 90–1435–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Aug. 13, 1991.

George E. Purdy, Bose, McKinney & Evans, Indianapolis, Ind., for plaintiffs.

Sheila Lieber, Philip R. Reitinger, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Deborah J. Daniels, U.S. Atty., Sue H. Bailey, Asst. U.S. Atty., Indianapolis, Ind., for defendant.

DILLIN, District Judge.

This matter comes before the Court on Defendant Robert R. Davila's motion to dismiss, Plaintiff Metropolitan School District of Wayne Township's motion for summary judgment, and on Defendant Robert R. Davila's cross motion for summary judgment. For the following reasons, Robert R. Davila's motion to dismiss is denied, Metropolitan School District of Wayne Township's motion for summary judgment is granted, and Robert R. Davila's cross motion for summary judgment is denied.

### Background

Plaintiff Metropolitan School District of Wayne Township, Marion County (School District), is a local school district in the State of Indiana. Plaintiff's action has been certified as a class action pursuant to Rule 23(b)(2), Fed.R.Civ.P. The class consists of all public school corporations in the State of Indiana. The School District and the plaintiff's class receive funding under part B of the Education of the Handicapped Act (EHA–B), 20 U.S.C. §§ 1401–85. Under EHA–B, the federal government provides funds to individual states, which then distribute the funds to local school districts to provide educational services to handicapped children. To be eligible for funding, EHA–B requires that states have in effect a policy that assures a free appropriate education (FAPE) to all handicapped children. 20 U.S.C. § 1412(1).

The Office of Special Education and Rehabilitative Services (OSERS), United States Department of Education, is the agency in charge of EHA–B administration. Prior to September 15, 1989, there was no OSERS requirement of any kind that educational services must be provided to handicapped students during periods of expulsion or suspension not causally related to the student's handicap. The School District did not continue education services to such expelled students, nor was it required to do so by the State of Indiana as a condition of obtaining EHA–B funds.

Defendant Robert Davila (Davila) is the Assistant Secretary in charge of OSERS. On September 15, 1989, Davila authored a letter to Frank E. New (New Letter) of the Ohio Department of Education. In the New Letter, OSERS, through Davila, expressed its view that the statutory requirement that a FAPE be provided to "all" handicapped children, applies to handicapped children during periods of long-term suspension or expulsion resulting from misbehavior that is not a manifestation of the child's handicap.

The New Letter was not published in the Federal Register or the Code of Federal Regulations. It was, however, made available for general publication in the Education for the Handicapped Law Report (EHLR). Paul Ash, Director of Special Education, Indiana Department of Education (Ash), initially read the letter in the EHLR and, based upon the letter, now requires the School District, and the plaintiff's class, to continue services in Indiana for expelled or suspended handicapped children. The School District estimates that the additional cost to it alone to comply with this requirement, based upon previous years expulsion figures, is $100,000 to $300,000 per year.

The present litigation arises out of the School District's complaint filed June 8, 1990. In its complaint, the School District alleges that Davila, through the New Letter, has promulgated a legislative rule without following the public notice and comment procedures mandated by the Administrative Procedure Act (APA), 5 U.S.C. § 553. Davila, and OSERS, contend that the New Letter is an interpretation of EHA–B, and, as such, is not subject to the notice and comment requirements of the APA.

## Discussion

Davila has moved this Court for an Order dismissing the School District's complaint. Both parties have also filed motions for summary judgment. As the motion to dismiss is potentially dispositive, judicial economy requires that it be considered first.

Motion to Dismiss

In support of his motion, Davila raises four grounds for dismissal: [1] this Court lacks personal jurisdiction over Davila in his individual capacity; [2] the school district has not stated a claim against Davila in his individual capacity for which relief can be granted; [3] the school district lacks standing to bring this action; and [4] this action is not ripe for review.

Davila's first and second grounds for dismissal relate to the School District's claims against Davila in his individual capacity. However, the School District has stated that because of "the urgency of this matter ... and the fact that this dispute goes to form rather than substance, plaintiff is willing to proceed at this stage against defendant in his official capacity to avoid any further procedural delays." In light of this statement, the Court grants the School District's request to amend its complaint by interlineation in order to make clear that this action is against Davila only in his official capacity. This being so, the Court finds that Davila's first two grounds for dismissal are denied as moot.

Davila's third ground for dismissal is that the School District lacks standing. To have "standing" means that the party bringing suit has a sufficient stake to obtain judicial resolution of that controversy. *Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636, 641 (1972). The Supreme Court has set forth three elements that the School District must satisfy to have standing: (1) the Plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"; (2) the injury "fairly can be traced to the challenged action" of the defendants; and (3) the injury "is likely to be redressed" by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700, 709 (1982).

Davila first contends that the School District has not suffered a sufficient actual or threatened injury. In support, Davila asserts that any injury threatened to the School District is speculative. Davila argues the threatened injury is speculative for the following reasons: it is not certain that there will be expulsions of handicapped children from the school; the state has not yet approved an EHA–B plan requiring expenditures for expelled children; Indiana itself, as opposed to the School District, may opt to provide the out-of-school services; and, the School District could seek redress through administrative processes which might eliminate the injury.

The School District states that its injury in the present action is the application of an illegal governmental decision by a governmental official under color of law. *See Black & Decker Corp. v. American Standard, Inc.*, 679 F.Supp. 1183, 1190 (D.Del. 1988) ("the actual or threatened 'injury' from which Plaintiffs suffer is that Plaintiffs are subject to the requirements of an allegedly unconstitutional statute"). Specifically, the School District contends that application of the New letter will require the School District to spend between $100,000 and $300,000, and force it to acquire additional personnel in the coming school year.

In support of its contention that this injury is not too speculative, the School

District has adduced proof that Indiana's *Final State Plan* for fiscal years 1991–93 requires services to be continued for students who have been suspended or expelled for reasons not causally related to their handicaps. According to Ash, this is a change in the Indiana Plan, dictated by the New letter and rulings of OSERS pursuant thereto.

Finally, the School District relies on the affidavit of Dr. Edward Bowes (Bowes), the Superintendent of the School District since 1978. Bowes states that during the 1989–90 school year 18 handicapped students were expelled for non-handicap-related reasons, and that there is no reason not to expect similar actions in the future.

The Court finds that the School District has stated a sufficient threatened injury, and that the testimony of Ash, combined with the affidavit of Bowes, shows that the injury is not so speculative as to defeat the School District's standing. In addition, the Court has not been persuaded that there is administrative review which could redress the School District's charge that Davila exceeded his statutory authority.

■ Davila next asserts that even if the School District has stated a threatened injury, it has not shown that this injury can be traced to Davila's actions. In support, Davila vaguely argues that the School District's injury cannot be traced to him because the State of Indiana may have been able to arrive at Davila's position expressed in the New Letter independently. *See Von Aulock v. Smith,* 720 F.2d 176, 181 (D.C.Cir.1983) (in regard to standing, "the indirectness of the injury ... may make it more difficult to meet the minimum requirement of Article III").

In opposition, the School District argues that Ash's deposition disposes of the traceability issue. As Davila contends, Ash does state that before the New Letter was issued the Indiana Department of Education's legal department may have taken various positions regarding the issue considered in the New Letter. However, Ash also states that based upon the New Letter, he believes continued services are now required, where before they were not.

The Court finds that the School District's threatened injury is traceable to the New Letter, and consequently the actions of Davila. Thus, Davila's motion to dismiss fails on this issue.

■ Davila argues that the "appropriate relief if plaintiff is successful is to enjoin Dr. Davila from issuing letters, not to enjoin him from interpreting EHA–B in his official capacity." However, the "appropriate relief" stated by Davila is precisely what the School District seeks.

In its complaint, the School District has asked for an injunction enjoining Davila from "taking any action in Indiana to enforce his position as evidenced in the New Letter ..." In its briefs the School District has repeatedly argued that "the ultimate correctness of defendant's position on continued services" is neither contested nor essential to the Court's analysis.

The School District's briefs, coupled with the relief sought in its complaint, makes it clear that the School District is not, as Davila contends, seeking to enjoin him from issuing interpretive letters in his official capacity. Rather the School District is seeking to enjoin Davila's position taken in the New Letter from being enforced until the APA's notice and comment requirements have been satisfied, on the theory that the Letter is not merely interpretive but is, in fact, legislative.

The Court finds that a favorable decision on the merits of the case would grant the relief sought by the School District. As the School District has also stated a threatened injury traceable to Davila, the Court holds that the School District has standing to bring this suit. Consequently, Davila's motion to dismiss on the issue of standing must be denied.

Davila's fourth, and final, ground for dismissal is that this cause is not ripe for decision. The doctrine of ripeness involves the question of whether there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a judgment. *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). "The problem [of ripe-

ness] is best seen in a two fold aspect, requiring us to evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (1967).

■ First to consider is the fitness of the issue for judicial consideration. The School District has framed the issue tendered in this action as "[w]hether defendant exceeded his statutory grant of authority in issuing the New Letter on September 15, 1989, ..." Davila admits that this is a "purely legal dispute" and that such issues are often appropriate for review. However, citing *Toilet Goods Association v. Gardner*, 387 U.S. 158, 162–64, 87 S.Ct. 1520, 1523–24, 18 L.Ed.2d 697, 701–02 (1967), Davila argues that "even a dispute as to authority is not ripe where the factual context of enforcement proceedings will improve the ability of the Court to determine the propriety for the rule or interpretation."

Davila asserts that "the letter does not specify the extent to which services must be provided, that is, whether fewer services than would be provided were the handicapped child in school, is 'appropriate' [FAPE] under those circumstances." This being so, Davila argues that this Court would be better prepared to "determine the appropriateness of and authority for the interpretation contained in the New Letter, when presented with a concrete enforcement context." The Court does not agree.

*Toilet Goods*, Davila's principal authority, "involved a challenge by manufacturers to an FDA regulation permitting the FDA Commissioner to suspend certification if FDA inspectors were refused access to manufacturing facilities and certain records." *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990). The issue presented was whether the above regulation was properly issued within the statutory authority to promulgate regulations "for the efficient enforcement" of the FDA act. The Court found this issue purely legal, but held that this issue was not ripe for judicial resolution.

Considering the FDA's authority under the "efficient enforcement" provision, the Supreme Court stated:

> This [issue] will depend not merely on an inquiry into statutory purpose, but concurrently on an understanding of what types of enforcement problems are encountered by the FDA ... We believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific allegation of this regulation than could be the case in the framework of the generalized challenge made here.

*Toilet Goods*, 387 U.S. at 163–64, 87 S.Ct. at 1524, 18 L.Ed.2d at 701–02.

The Court finds that the issue presented for judicial consideration by the School District would not be aided by a challenge arising under a specific situation. Unlike the issue in *Toilet Goods*, the issue in the present action is whether the New Letter states legislative law requiring notice and comment under the APA, or is an interpretation which does not. The resolution of this issue does not depend on factors outside the APA and EHA–B. The School District is not questioning the substantive validity of the New Letter at this time; it questions the manner in which it was promulgated. Accordingly, the Court holds that the issue tendered in this action is appropriate for judicial resolution.

■ The second consideration under the doctrine of ripeness is the hardship to the parties if consideration is withheld. Davila argues that there is no advance action required by the School District because the need for providing homebound services will arise only in future specific situations. Hence no hardship to the School District will result if this action is delayed.

The School District counters that there is indeed hardship: "plaintiff must begin the school year in less than three (3) weeks with at least a $100,000 budgetary shortfall because Indiana requires compliance with the defendant's position; plaintiff must also locate and contract for additional teacher services." Although the quoted words were made with respect to the 1990–

91 school year, the same situation exists at this time with respect to its 1991–92 year. Further, the School District argues that to "test Indiana's regulation at the expense of one child in the name of administrative review and ripeness ... not only needlessly involves the student, but wastes public funds and resources to challenge defendant's actions...." The Court agrees.

The Court finds that the School District is threatened with a concrete hardship that has an immediate impact on its day to day affairs. Thus, this matter is ripe for judicial review. *Natural Resources Defense Council v. Thomas*, 845 F.2d 1088, 1093 (D.C.Cir.1988); *see Koehring Co. v. Adams*, 605 F.2d 280, 282–83 (7th Cir.1979); *U.S. v. Zimmer Paper Products, Inc.*, 733 F.Supp. 1265 (S.D.Ind.1989) (defendant's forced choice to either install incinerator, which defendant believes not required or to incur fines, was sufficient to show claim ripe for review). For all of the above reasons, Davila's motion to dismiss is denied.

Summary Judgment

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984). The facts in this action are not in dispute. The position taken by Davila in the New Letter has not been published in the Federal Register or Code of Federal Regulations, nor were comments taken prior to its being issued. Both parties agree that the issue is whether, as the School District asserts, the New Letter is a "legislative rule" requiring notice and comment under the APA, or, as Davila contends, merely an "interpretive rule" exempt from the APA's requirements.

■ "An interpretative rule expresses the agency's view of what another rule, regulation or statute means." *Allied Van Lines, Inc. v. Interstate Commerce Commission*, 708 F.2d 297, 300 (7th Cir.1983) (citing *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33, 37 n. 14 (D.C.Cir.1974)). It advises the public of an agency's construction of regulations that it administers. *American Medical*

*Ass'n v. Heckler*, 606 F.Supp. 1422, 1439 (S.D.Ind.1985) "An interpretive rule simply states what the administrative agency thinks the statute means, and only reminds affected parties of existing duties." *Id.* (quoting *General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C.Cir.1984)).

■ In contrast to the interpretive rule, a "legislative rule is issued by an agency pursuant to statutory authority implementing the statute and 'has the force and effect of law.'" *American Medical Ass'n*, 606 F.Supp. at 1439 (citing *Batterton v. Francis*, 432 U.S. 416, 425 & n. 9, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977)). Legislative rules are those which create law, usually implementary to an existing law. *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952). The "common understanding [is] that legislative rules usually involve matters within agency expertise, which expertise notice and comment procedures are intended to sharpen." *Allied Van Lines*, 708 F.2d at 300.

■ Having examined the New Letter, the Court finds that it is best considered a legislative rule. On its face, the New Letter purports to be merely Davila's opinion of the meaning of 20 U.S.C. § 1412(1), but its effect is to change a long standing policy of OSERS without a corresponding change in the underlying statute or regulations.

The authority of the Secretary of Education, Davila's superior, is set out in 20 U.S.C. § 1417(b) as follows:

> In carrying out the provisions of this subchapter, the Secretary shall issue, not later than January 1, 1977, amend, and revoke such rules and regulations as may be necessary. *No other less formal method of implementing such provisions is authorized.* (our emphasis).

Implicit in this provision is the requirement that proposed rules be published in the Federal Register with an opportunity for comment by interested persons prior to a rule taking effect. 5 U.S.C. § 553. Pursuant to the power granted to the Secretary, some 425 pages of rules and regulations have been enacted, occupying an entire vol-

ume of the Code of Federal Regulations (CFR), 34 CFR parts 300–399 (July 1, 1990).

The New Letter is obviously a substantive rule or regulation in that (1) it imposes a new and mandatory duty upon all school districts in the United States, (2) the new duty is not expressly required by EHA, and (3) contrary to the New Letter itself it is not required by *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

■ Substantive rules implement a statute or rule, and grant rights, impose obligations, or produce other significant effects on private interests. *National Treasury Employees Union v. Reagan,* 685 F.Supp. 1346 (E.D.La.1985). The New Letter and its requirements are clearly intended to be binding on plaintiff, plaintiff's class, and all states by the letter itself ("... [s]tates receiving EHA–B funds are statutorily obligated ..."), and by the defendant's response to plaintiff's second set of interrogatories. It therefore purports to create law implementary to an existing law, and qualifies as a substantive rule under the above definition. *See Gibson Wine Co. v. Snyder,* 194 F.2d 329 (D.C.Cir. 1952).

If the Supreme Court's opinion in *Honig* means what the defendant seems to think it means, i.e., that the Act indeed requires what his letter mandates, then the letter could perhaps be construed as interpretive. However, *Honig* does not deal with the situation in which a child has been suspended or expelled by conduct having no relating to his disability, but rather to the situation in which the conduct arises out of the disability itself. *Honig* affirms the decision of the Ninth Circuit Court of Appeals rendered in *Doe By Gonzales v. Maher,* 793 F.2d 1470 (1986) in all but one detail not here material. The key portion of the underlying *Maher* decision, in so far as the present controversy is concerned, is exactly contra the New Letter, and reads as follows:

We do not hold, however, that a school district may never withhold educational services from a handicapped child. If the child's behavior is properly determined *not* to be a manifestation of his handicap [footnote omitted], the handicapped child can be expelled. *See Kaelin v. Grubbs,* 682 F.2d 595, 602 (6th Cir.1982); *S–1 v. Turlington,* 635 F.2d 342, 248 (5th Cir.) (Unit B), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Doe v. Koger,* 480 F.Supp. 225, 228 (N.D.Ind.1979). This conclusion does not conflict with the EAHCA. When a child's misbehavior does not result from his handicapping condition, there is simply no justification for exempting him from the rules, including those regarding expulsion, applicable to other children. Therefore, when a handicapped child is properly expelled, the school district may cease providing all educational services—just as it could in any other case. To do otherwise would amount to asserting that all acts of a handicapped child, both good and bad, are fairly attributable to his handicap. We know that this is not so.

793 F.2d at 1482.

The Court therefore holds that in his New Letter the defendant attempted to enact an administrative rule in a manner contrary to 5 U.S.C. § 553 and 20 U.S.C. § 1417(b), and that such action is contrary to law. Plaintiff's motion for summary judgment is granted, and that of the defendant is denied. Judgment will be entered accordingly.

### JUDGMENT

The Court having this day filed its entry granting the motion of the plaintiff for summary judgment, which entry reads as follows: (H.I.), now in accordance therewith

IT IS CONSIDERED AND ORDERED that the defendant, Robert R. Davila, in his official capacity, be and he is hereby enjoined from taking any action in Indiana to enforce his position as set out in the New Letter as to plaintiff, or members of its class, or the State of Indiana.

IT IS FURTHER CONSIDERED AND ORDERED that said defendant be, and he is hereby enjoined from taking any action in Indiana against any agency of the State or public school corporation within the

State which would require the continuance of educational services to an eligible child under the Education of the Handicapped Act during periods of long-term suspension or expulsion not causally related to that child's handicap.

IT IS FINALLY CONSIDERED AND ORDERED that the defendant pay the costs of this action.